**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| TOPIA TECHNOLOGY, INC., <br><br> Plaintiff, <br><br> v. <br><br> BOX, INC., SAILPOINT TECHNOLOGIES HOLDINGS, INC. AND VISTRA CORP., <br><br> Defendants. | Case No. 6:21-cv-01372 <br><br> <u>**JURY TRIAL DEMANDED**</u> |

<u>**COMPLAINT FOR PATENT INFRINGEMENT**</u>

Plaintiff Topia Technology, Inc., ("Topia" or "Plaintiff") files this Complaint for patent infringement against Defendant Box, Inc., ("Box" or "Defendant"), SailPoint Technologies Holdings, Inc. ("SailPoint") and Vistra Corp. ("Vistra") (collectively "Defendants"), and alleges as follows:

<u>**NATURE OF ACTION**</u>

1.      This is an action for patent infringement arising under 35 U.S.C. § 1 *et seq.*, including §§ 271, 283, 284, and 285.

<u>**THE PARTIES**</u>

2.      Topia is a company organized and existing under the laws of the State of Washington with its principal place of business in Tacoma, Washington.

3.      Upon information and belief, Box, Inc. ("Box" or "Defendant"), is a corporation organized and existing under the laws of the State of Delaware.

4.      Box has a regular and established place of business in this District, including an office in Austin, Texas located at 600 Congress Ave, 24th Floor, Austin, Texas 78701. Box's

registered agent for service of process is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin TX 78701.

5.      Upon information and belief, SailPoint is a corporation organized and existing under the laws of the State of Delaware.

6.      SailPoint has a regular and established place of business in this District, including its headquarters in Austin, Texas located at 11120 Four Points Drive, Suite 100, Austin TX 78726.  SailPoint's registered agent for service of process is C T Corporation System located at 1999 Bryan St., STE. 900, Dallas, TX 75201.

7.      Upon information and belief, Vistra is a corporation organized and existing under the laws of the State of Delaware.

8.      Vistra has a regular and established place of business in this District, including an office at 1005 Congress Ave., Austin, TX 78701.  Vistra's registered agent for service of process is Capital Corporate Services, Inc., located at 206 E 9th St., Suite 1300 Austin, TX 78701.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1367, and 1338(a).

10.     Upon information and belief, Box is in the business of providing online document storage and synchronization products and services, including products and services that infringe Plaintiff's patents identified below, through Box's online platforms and mobile applications to customers. Upon information and belief, Box has about 41 million users across multiple countries, including users in the State of Texas and this District.

11.     Upon information and belief, Box is subject to personal jurisdiction of this Court because it has a regular and established place of business in Austin, Texas, and is a resident of this state in this judicial District.

12.     Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400, because Box has committed infringing acts in this District and has a regular and established place of business in this District.

13.     Upon information and belief, SailPoint is in the business of using Box products and services and providing valued added integration services and products for Box's online document storage and synchronization products and services, including those products and services that infringe Plaintiff's patents identified below, through Box's online platforms and mobile applications to customers.

14.     Upon information and belief, SailPoint is subject to personal jurisdiction of this Court because it has a regular and established place of business in Austin, Texas, and is a resident of this state in this judicial District.

15.     Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400, because SailPoint has committed infringing acts in this District and has a regular and established place of business in this District.

16.     Upon information and belief, Vistra is a Box customer and uses Box's online document storage and synchronization products and services, including those products and services that infringe Plaintiff's patents identified below, through Box's online platforms and mobile applications.

17.     Upon information and belief, Vistra is subject to personal jurisdiction of this Court based upon it having regularly conducted business, including the acts complained of herein, within the State of Texas and/or deriving substantial revenue from goods and services provided to customers in Texas and in this District.  Upon information and belief, this Court has personal jurisdiction over Vistra, because Vistra, including acts throughout Texas and in this District, has committed, and/or aided, abetted, contributed to and/or participated in the

commission of, the tortious action of patent infringement that has led to foreseeable harm and injury to Plaintiff, such that Vistra should anticipate being hauled into court in this judicial District.

18.     Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400, because Vistra has committed infringing acts in this District and has a regular and established business in this District.

19.     The allegations provided below are exemplary and without prejudice to Plaintiff's infringement contentions that will be provided pursuant to the Court's scheduling order and local civil rules, including after discovery as provided under the Federal Rules of Civil Procedure. In providing these allegations, Plaintiff does not convey or imply any particular claim constructions or the precise scope of the claims of the asserted patents. Plaintiff's proposed claim constructions, if any, will be provided pursuant to the Court's scheduling order and local civil rules.

**COUNT ONE**

**INFRINGEMENT OF U.S. PATENT NO. 9,143,561**

20.     Plaintiff incorporates Paragraphs 1 through 19 as though fully set forth herein.

21.     U.S. Patent No. 9,143,561 ("the '561 Patent"), entitled "Architecture For Management of Digital Files Across Distributed Network," issued on September 22, 2015. A copy of the '561 Patent is attached as Exhibit 1.

22.     The '561 patent is generally directed to systems and methods for sharing electronic files between multiple devices, wherein when a user modifies an electronic file on a device, a copy of the modified electronic file is automatically transferred to at least one other device.

23.     Plaintiff is the owner by assignment of all rights, title, and interest in and to the '561 Patent, including the right to assert all causes of action arising under the '561 Patent and the right to all remedies for the infringement of the '561 Patent.

24.     Claim 1 of the '561 Patent recites:

1.     A system, comprising:

a first electronic device configured to selectively execute a first application, the first electronic device being in communication with a second electronic device and a third electronic device, each associated with a user wherein the first electronic device is configured to:

receive from a second application executable on the second electronic device a copy of a first electronic file automatically transferred from the second application when the user modifies a content of the first electronic file; and

wherein the first electronic device is further configured to receive from a third application executable on the third electronic device a copy of a second electronic file automatically transferred from the third application when the user modifies a content of the second electronic file; and

wherein the first application is further configured to automatically transfer the modified first electronic file copy to the third electronic device to replace an older version of the first electronic file stored on the third electronic device with the modified first electronic file copy having the content modified by the user; and

automatically transfer the modified second electronic file copy to the second electronic device to replace an older version of the second electronic file

stored on the second electronic device with the modified second electronic

file copy having the content modified by the user;

wherein the second application automatically transfers the copy of the modified

first electronic file to the first electronic device upon determining that a save

operation has been performed on the modified first electronic file.

**DEFENDANT BOX**

25.    Box offers a suite of products and services, including Box Sync and Box Drive,

for individuals which practice each and every limitation of one or more claims of the '561 patent.

Box's products and services include systems and methods for sharing electronic files between

multiple devices, wherein when a user modifies an electronic file on a device, a copy of the

modified electronic file is automatically transferred to at least one other device.

26.    Box products and services involve systems that include various client and server

devices and software.  Box's server infrastructure includes a first electronic device (*e.g.*, a server

system) executing an application (*e.g.*, running Box server software).  The first electronic device

(*e.g.*, the server system) is in communication with a second electronic device (*e.g.*, a first client

device such as a laptop or a smart phone) and a third electronic device (*e.g.*, a second client

device such as a laptop or a smart phone).  Box promotes its products and services as a system

for enabling its customers to mirror data across multiple devices:

27.    For example, Box offers client software, including Box Sync and Box Drive,

running on Windows, Mac, iOS, Android, and web browsers:

## About Box Sync

Posted Feb 26, 2020    Updated Mar 3, 2020

Print

Box Sync is a productivity tool that allows you to mirror data stored on Box to your desktop. You can then navigate and modify content stored on the Box website through your computer's native file browsing interface, without using a web browser. Content that syncs down to your computer are available for offline access. If you make changes to the synced files locally, these changes automatically sync back up to your Box account.

https://support.box.com/hc/en-us/articles/360043696154-About-Box-Sync (last visited December 16, 2021)

## Installing Box Sync

Posted Feb 26, 2020    Updated Feb 24, 2021

Print

Box Sync is a productivity tool that enables you to mirror data stored on Box to your desktop. You can then navigate and modify content stored on the Box website through your computer's native file browsing interface, without using a web browser. Content that syncs down to your computer is available for offline access, and if you make changes to the synced files locally, these changes automatically sync back up to your Box account.

### Mac

**Box Sync system requirements for Macs**

- Supported OS version
- HFS+ or APFS formatted hard drive.

**Mac install steps**

1. Download the Box Sync Installer DMG file.
2. Open the DMG file when the download is complete.
3. Drag the Box Sync app icon into your Applications folder.
4. Double-click on Box Sync in your Applications folder.

Your synced files are stored in a new folder called **Box Sync**. You can access this folder from the **Favorites** section in the left pane of your Finder window.

**Windows install steps**

1. Download the Box Sync Setup EXE file.

2. Open the EXE file from where the file was downloaded to Windows, and follow the installation instructions.

3. Box Sync starts automatically when the installation completes.

Your synced files are stored in a new folder called **Box Sync.** You can access this folder from the **Favorites** section in the left pane of Windows Explorer. Alternately, right-click the **Box Sync** icon in the system tray (bottom right corner of your screen - near the clock) and click **Open Sync Folder.**

https://support.box.com/hc/en-us/articles/360043697194-Installing-Box-Sync: (last visited December 16, 2021)

# Work with your cloud files on your desktop

Box Drive is the incredibly simple way to work with all of your files — even billions of files — right from your desktop, taking up very little hard drive space. Open your Windows Explorer or Mac Finder to find every file you need, edit like you would any local file and save it automatically to the cloud. And, keep enterprise-grade security protecting everything you do.

## Seamlessly create and edit files

Whether you're creating a new document or editing a PDF, any changes you make, even when offline, will automatically save to Box. You can also lock shared files so others can't overwrite your edits.

## Key features

**Access all of your files**
Box Drive enables you to work with all your files stored in Box right from your desktop. If you're looking for Box Sync, check out the Box Community.

**Work with your files offline**
View and edit your files without an internet connection. Any changes made while offline are automatically updated when you're back online.

**Replace desktop backup solutions**
Files are no longer stored on users' hard drives, reducing the risk of data loss if devices are lost or stolen.

**See the files shared with you**
Any files shared with you, including read-only, will automatically appear in Box Drive.

**Save every version**
By automatically retaining versions of files every time you click "save," Box Drive prevents you from losing work.

**Keep all your content secure**
Box Drive works with all our security capabilities, including information governance, retention and device security.

https://www.box.com/drive: (last visited December 16, 2021)

### To install Box Drive on macOS:

1. Download the Box Drive installer.
2. Navigate to the location where you saved the file, then, double-click it. The installer starts.
3. When prompted, select **Install for all users of this computer** and click **Continue.**
4. **DO NOT** change the install location. Click **Install.**



5. The system displays a notificatation when the installation completes. Click **Close.**
6. Box Drive launches. (If you are using macOS 10.13 or later, continue below for additional steps.)

### To install Box Drive on Windows:

1. Download the Box Drive installer.
2. Navigate to the location where you downloaded the file, and double-click it to run the installer.
3. Follow the instructions to complete the installation. If Box Drive does not launch automatically when the installation completes, you may need to go to the **Start** menu and launch the application manually.
4. You must log in to Box Drive the first time you open it. You may be redirected to your company's logfin page.
5. After you log in, Box Drive displays a brief walkthrough of its features. When this completes, your Box content is available at C:\Users\USERNAME\Box.

https://support.box.com/hc/en-us/articles/360043697474-Installing-and-Updating-Box-Drive:

(last visited December 16, 2021)

28.     Box server infrastructure includes an electronic device running Box server software that is configured to execute a Box server application, and electronic client devices running Box software being in communication with the electronic device running Box server software.

29.     Box operates data centers in the United States that store files that are synched with Box Sync or Box Drive.  Box provides the following overview of its architecture:

## Your data where you want it

Box Zones enables organizations to address data residency obligations across multiple geographies, allowing them to raise the bar for privacy and control in the cloud — whether they have employees, customers, or partners across Europe, Asia, Canada, or Australia. With Box Zones, we're removing the barriers to cloud adoption so every business around the globe can work as one.

Box Zones builds on the strong data protection and privacy provided by Box, allowing companies to store their encrypted-at-rest content around the world. Now, organizations with users in Europe, Asia, Canada or Australia can use local data storage to store files in-region. This helps address regional and country-specific data privacy concerns, customer data residency concerns (including concerns about Brexit) and other requirements to store files in-region.

With Box Zones, we deliver flexibility and choice for in-region storage at unparalleled reach and scale - all with the ease of use you expect from Box.

 United States - US Federal Zone

## How it works

Box Zones provides data localization by separating all the powerful collaboration, productivity, and ease of use features of Box from the storage layer. In fact, where content is stored, while determined by the admin, is invisible to the end user. This allows end users to go on with their day without ever having to think about where their data needs to be stored. Box Zones is made possible by leveraging the global network of data centers of our partners.

https://www.box.com/zones: (last visited December 16, 2021)

That's why we're incredibly excited to announce Box Zones: a breakthrough technology providing in-region data storage with Box, and raising the bar for privacy and control in the cloud. Box Zones enables businesses around the globe to adopt Box as their modern content management platform, while letting them store their data in the region of their choice, starting with Germany, Ireland, Singapore or Japan, in partnership with IBM and Amazon.



## How we did it

Box Zones has been a key focus of our engineering team for the past couple of years, with the core goal of separating our application and service from how and where we store encrypted files. Box Zones, and its corresponding architecture affords us the flexibility to leverage both our own data centers and select cloud partners to accelerate our footprint in new geographies.

> With Box Zones, we're partnering with two world-class global companies, IBM and Amazon, to provide our customers with storage infrastructure at unparalleled reach and scale. Over time, you will see us enter more regions throughout (and beyond) Europe and Asia, and potentially open up to other partners in the future.

> Box will continue to operate our own data centers in the US, but Box Zones is a powerful extension of our infrastructure that will help us expand to more places faster. Best of all, it's fully transparent to the user (and enterprise).

https://blog.box.com/introducing-box-zones: (last visited December 16, 2021)

> Managing your content with Box enables you to work in a secure, resilient environment where you can prevent and manage threats. When your end users are on Box, they operate within a single redundant, integrated, and centralized architecture with security embedded throughout the infrastructure and processes. This means employees access and share content directly and securely from the cloud, eliminating the incentive to use unauthorized, insecure methods and services, and have access through a highly available software solution.

> ▸ **Infrastructure security and assurance** is the bedrock on which Box operates. Box processes over one billion files every single day, and has multiple data centers with reliable power sources and backup systems.

> **What Box offers:**
> - 99.9% SLAs
> - In-transit and at-rest encryption (256 bit AES)
> - Customer-driven penetration testing
> - Dedicated 24/7 incident response
> - Right to audit
> - Hardware security modules (HSMs)
> - Automation of Intrusion Prevention Systems (IPS) and Intrusion Detection Systems (IDS) into firewalls
> - Only US citizens have access to critical production areas (a FedRAMP requirement)



https://www.box.com/resources/sdp-secure-content-with-box: (last visited December 16, 2021)

30.     The first electronic device (*e.g.*, the server system) running Box server software and the first and the second electronic client devices (the first and second client devices such as laptop or a smart phone) running Box software are associated with a user.  Client devices are associated with a user using a Box account:



https://support.box.com/hc/en-us/articles/360044196373-The-Basics-of-Box: (last visited December 16, 2021)

Login and Account

**Can I sync different subsets of files across multiple personal computers using the same login?**

No. Box Sync 4.x does not allow you to sync a different subset of files across different computers.

**How often do I need to login to Box Sync?**

If you actively use Box Sync on a daily basis, you may not need to explicitly login.

If you have not connected to Box Sync in 60 days, you will need to explicitly login.

**Can I use multiple logins with the same Sync client?**

Yes, it is possible to logout of one Box account and then login to another account on the same client. However, logging into Sync with a Box account that is different from the previous login will always prompt a re-download of all synced content to a new Box Sync folder. Please allow all content to download to the new Box Sync folder before manually introducing content to this local directory.

**Can multiple instances of Box Sync run on the same computer?**

No, multiple instances of Box Sync cannot be run on a single machine. Only one Box Sync process can be running on a machine at any given time.

**Example:** *John and Mary both use computer A. They have separate machine logins. John and Mary cannot have Box Sync running at the same time on their different accounts.*

**Can I log into Box Sync using a Roaming User Profile?**

No, Box Sync will not function if you are logged into your computer with a Roaming User Profile. The Box Sync folder is not tied to roaming profiles.

https://support.box.com/hc/en-us/articles/360043696354-Box-Sync-Frequently-Asked-Questions#crosscompsync:  (last visited December 16, 2021)

You must log in to Box Drive the first time you open it. (You may be redirected to your company's login page.)

After you log in, Box Drive displays a brief walkthrough of its features. When this is complete, your Box content is available at ~/Box.

## Signing In

### Mac

After installation, Box Drive prompts you to sign in. You may be redirected to your company's login page.

After you log in, Box Drive displays a new Finder window. **Box** should display in the Finder sidebar, under both **Favorites** and **Devices**.

### Windows

Box Drive runs automatically after it is installed. You can also open it from the **Start** menu.

To start using Box Drive, simply sign in to Box at the prompt. You may be redirected to your company's login page. After you launch Box Drive for the first time, you can access Box from either the **File Explorer** or the Windows system tray.

### Logging out / switching accounts

To log out from Drive, click the Box Drive icon in your system tray (Windows) or menu bar (macOS). With the search window open, click the gear icon and then click **Logout**.

https://support.box.com/hc/en-us/articles/360043697474-Installing-and-Updating-Box-Drive

(last visited December 16, 2021)

31.     The first electronic device (*e.g.*, the server system running Box server software) is configured to receive from a second application (*e.g.*, BoxSync software) executable on the second electronic device (*e.g.*, the first client device such as a laptop or a smart phone) a copy of a first electronic file automatically transferred from the second application when the user modifies a content of the first electronic file.

32.     Box server system receives, over a network, a copy of a first file from the first client device (*e.g.*, a laptop or a smart phone) associated with a user, the copy of the first file being automatically received from the first client device when the user modifies the content of the first file stored on the first client device, the copy of the first file being an updated version of the first file that is generated from the user modifying the content of the first file in the client device.  When a user modifies a file that has been configured to be synched, the Box software on the client device will upload the updated version of the file that the user modified to Box's servers:

33.     When a user modifies a file inside the Box Sync or Box Drive folder on a second electronic device, a copy of the file will be automatically uploaded to Box's servers:



https://support.box.com/hc/en-us/articles/360043696154-About-Box-Sync: (last visited December 16, 2021)

**Marking Content for Box Sync**

2 months ago · Updated

Control the content you that is synced to your local Box Sync folder by marking content in your Box.com account. A folder that is marked for Sync displays a blue check mark icon beside its name.

1. Select a folder by clicking beside its name, or click the folder name to open the folder. The right hand sidebar should display information about the folder you've selected or opened.
2. Click **Details** in the sidebar.
3. Click the **Sync to Desktop** slider to mark this folder for sync. By default, this will mark all contained folders for sync as well. You can unmark specific subfolders within a synced folder, if you only want certain content to be synced.

https://support.box.com/hc/en-us/articles/360044196393-Marking-Content-for-Box-Sync:

(last visited December 16, 2021)

**What is the behavior when deleting files and folders from Sync?**

- If you delete a file or folder from your local Box Sync folder, the action will be mirrored on Box.com.
- If you delete a file or folder from the online Box.com site that was marked as *Sync Folder to Computer*, that file or folder deletion will be mimicked in your local Box Sync folder.

https://support.box.com/hc/en-us/articles/360043696354-Box-Sync-Frequently-Asked-

Questions: (last visited December 16, 2021)

**Working in Finder**

If you use a Mac, you can access Box Drive by opening Finder. In the sidebar, navigate to **Devices > Favorites > Box**. Open this folder to display all of the contents of your **All Files** page on Box.com. You can navigate through any folder and open every file you see just as if it were a local file.

For each file in the Box folder, Box Drive displays these standard properties:

- File name
- File size
- File type
- Date created (more information on Box timestamps)
- Date modified (more information on Box timestamps)

The blue cloud icon beside a file or folder indicates the item is safely stored and up to date in Box. Add or update a file or folder in Box Drive, and the icon changes to an orange syncing icon. The icon also displays as syncing when Box Drive is uploading changes you made to files offline. When the sync completes the icon resets to the blue cloud.



# Working in Explorer

If you use Windows, you can access Box Drive by opening Explorer and navigating to the folder named Box. Open this folder to display all of the contents of your All Files page on Box.com. You can navigate through any folder and open every file you see just as if it were a local file.

For each file in the Box folder, Box Drive displays these standard properties:

- File name
- File size
- File type
- Date created (more information on Box timestamps)
- Date modified (more information on Box timestamps)

The blue cloud icon beside a file or folder indicates the item is safely stored and up to date in Box. Add or update a file or folder in Box Drive, and the icon changes to an orange syncing icon. The icon also displays as syncing when Box Drive is uploading changes you made to files offline. When the sync completes the icon resets to the blue cloud.



**Working with Other Applications**

Working with Box files in other applications such as Word or Excel is seamless. Open the file from Box Drive and work with it as you usually would. When you're done, save the file. The file automatically syncs back to Box. You can also use Save As to save the file to a new location, save the file with a new name, or create new folders to store your file. All of those changes save automatically in Box.

**Marking Content for Offline Use**

You can also mark content in Box Drive to make it available offline. Drive downloads this content to your device's hard drive so you can work when you're not connected to the Internet. When you get back online, Drive automatically uploads the revised content, so you are always working with the most up-to-date versions of your files. More information about making content available offline.

https://support.box.com/hc/en-us/articles/360043697494-Using-Box-Drive-Basics: (last visited December 16, 2021)

    34.      Files may also be updated using the Box API:



## Query Parameters

**fields** `string array` in query

optional

example `id,type,name`

A comma-separated list of attributes to include in the response. This can be used to request fields that are not normally returned in a standard response.

Be aware that specifying this parameter will have the effect that none of the standard fields are returned in the response unless explicitly specified, instead only fields for the mini representation are returned, additional to the fields requested.

## Request Body

**description** `string` in body

optional

example `The latest reports. Automatically updated` Max Length `256`

The description for a file. This can be seen in the right-hand sidebar panel when viewing a file in the Box web app. Additionally, this index is used in the search index of the file, allowing users to find the file by the content in the description.



**lock** `object` in body

Defines a lock on an item. This prevents the item from being moved, renamed, or otherwise changed by anyone other than the user who created the lock.

Set this to `null` to remove the lock.

**lock.access** `string` `null`

optional

example `lock`

Value is always `lock`

**lock.expires_at** `string / date-time` `null`

optional

example `2012-12-12T10:53:43-08:00`

Defines the time at which the lock expires.

**lock.is_download_prevented** `boolean` `null`

optional

example `true`

Defines if the file can be downloaded while it is locked.

**name** `string` in body

optional

example `NewFile.txt`

An optional different name for the file. This can be used to rename the file.

**parent** `object` in body

An optional new parent folder for the file. This can be used to move the file to a new folder.

`optional`

**parent.id** `string` null

example `123`

The ID of parent item

---

**permissions** `object` in body

Defines who can download a file.

`optional`

**permissions.can_download** `string` null

example `open`

Defines who is allowed to download this file. The possible values are either `open` for everyone or `company` for the other members of the user's enterprise.

This setting overrides the download permissions that are normally part of the `role` of a collaboration. When set to `company`, this essentially removes the download option for external users with `viewer` or `editor` a roles.

Value is one of `open`, `company`



---

**shared_link** `object` in body

Defines a shared link for a file. Set this to `null` to remove the shared link.

`optional`

**shared_link.access** `string` null

example `open`

The level of access for the shared link. This can be restricted to anyone with the link (`open`), only people within the company (`company`) and only those who have been invited to the folder (`collaborators`).

This field defaults to the `default` access level, which is the access level as specified by the enterprise admin.

The `company` access level is only available to paid accounts.

Value is one of `default`, `open`, `company`, `collaborators`





https://developer.box.com/reference/put-files-id/: (last visited December 16, 2021).

35. The first electronic device (*e.g.*, the server system running Box server software) is configured to automatically transfer the modified first file copy to the third electronic device (*e.g.*, the second client device such as a laptop or a smart phone) to replace an older version of the first file stored on the third electronic device (*e.g.*, the second client device) with the modified first file copy having the content modified by the user. Box provides the following architecture for synchronizing the files across the devices:

## About Box Sync

Posted Feb 26, 2020   Updated Mar 3, 2020

Box Sync is a productivity tool that allows you to mirror data stored on Box to your desktop. You can then navigate and modify content stored on the Box website through your computer's native file browsing interface, without using a web browser. Content that syncs down to your computer are available for offline access. If you make changes to the synced files locally, these changes automatically sync back up to your Box account.

Print

https://support.box.com/hc/en-us/articles/360043696154-About-Box-Sync: (last visited

December 16, 2021)

### Marking Content for Offline Use

You can also mark content in Box Drive to make it available offline. Drive downloads this content to your device's hard drive so you can work when you're not connected to the Internet. When you get back online, Drive automatically uploads the revised content, so you are always working with the most up-to-date versions of your files. More information about making content available offline.

https://support.box.com/hc/en-us/articles/360043697494-Using-Box-Drive-Basics: (last

visited December 16, 2021)

     36.     When a file is marked for offline usage in Box Drive by a client device, a copy of

the file will automatically be transferred to that device when the file is change:

## Making Content Available Offline

Posted Feb 26, 2020   Updated Sep 22, 2021

Print

With Box Drive's Mark for Offline feature, your Box cloud content is available wherever you are - in a remote office, traveling on a plane, and so on - regardless of internet connectivity. Just select the Box folders you need access to, and Box Drive automatically downloads all of the folder contents to your computer. If you or someone else make changes to this content while you're offline, Box Drive automatically uploads the revised content when you are back online so you are always working with the most up-to-date versions of your files.

### Collaborating with another person?

Box uploads changes as they're saved. However, collaborators cannot see each others' revisions in real-time -- that is, not until after each of you have saved and exited the file and Box Drive syncs all changes. This is true regardless of whether you are working while connected or offline, However, in this case the possibility exists for two collaborators to save conflicting changes on the same file. By way of illustration: if you go back online first, Box uploads and saves your revised file as a new version. When your collaborator goes back online, Box uploads her revised file, but saves it as a separate version. If necessary, you both must then decide which revision to keep and which to discard.

https://support.box.com/hc/en-us/articles/360043697574-Making-Content-Available-Offline:

(last visited December 16, 2021)

37.     Additionally, using the Box API, a third party application can subscribe to be notified of events, such as file modification, and can respond by downloading a copy of the modified file:

## Events

The event feed provides a way for an application to subscribe to any actions performed by any user or users in an enterprise.

## User events

User Events provide low latency stream of events for the currently authenticated user.

## Admin events

Admin Events provide an event feed for all users and content in an enterprise.

https://developer.box.com/guides/events/: (last visited December 16, 2021)

## Long-Poll Events

To get real-time notification of activity in a Box account you can use the long poll feature of the `OPTIONS /events` API.

## Long Polling

Long polling involves opening an HTTP request and keeping it open until the server sends a response, then repeating the process over and over to receive updated responses.

https://developer.box.com/guides/events/polling/: (last visited December 16, 2021)

**event_type** `string`

example `FILE_MARKED_MALICIOUS`

The event type that triggered this event

Value is one of `ACCESS_GRANTED` , `ACCESS_REVOKED` , `ADD_DEVICE_ASSOCIATION` , `ADD_LOGIN_ACTIVITY_DEVICE` , `ADMIN_LOGIN` , `APPLICATION_CREATED` , `APPLICATION_PUBLIC_KEY_ADDED` , `APPLICATION_PUBLIC_KEY_DELETED` , `CHANGE_ADMIN_ROLE` , `CHANGE_FOLDER_PERMISSION` , `COLLABORATION_ACCEPT` , `COLLABORATION_EXPIRATION` , `COLLABORATION_INVITE` , `COLLABORATION_REMOVE` , `COLLABORATION_ROLE_CHANGE` , `COLLAB_ADD_COLLABORATOR` , `COLLAB_INVITE_COLLABORATOR` , `COLLAB_REMOVE_COLLABORATOR` , `COLLAB_ROLE_CHANGE` , `COMMENT_CREATE` , `COMMENT_DELETE` , `CONTENT_ACCESS` , `CONTENT_WORKFLOW_ABNORMAL_DOWNLOAD_ACTIVITY` , `CONTENT_WORKFLOW_AUTOMATION_ADD` , `CONTENT_WORKFLOW_AUTOMATION_DELETE` , `CONTENT_WORKFLOW_POLICY_ADD` , `CONTENT_WORKFLOW_SHARING_POLICY_VIOLATION` , `CONTENT_WORKFLOW_UPLOAD_POLICY_VIOLATION` , `COPY` , `DATA_RETENTION_CREATE_RETENTION` , `DATA_RETENTION_REMOVE_RETENTION` , `DELETE` , `DELETE_USER` , `DEVICE_TRUST_CHECK_FAILED` , `DOWNLOAD` , `EDIT` , `EDIT_USER` , `EMAIL_ALIAS_CONFIRM` , `EMAIL_ALIAS_REMOVE` , `ENABLE_TWO_FACTOR_AUTH` , `ENTERPRISE_APP_AUTHORIZATION_UPDATE` , `FAILED_LOGIN` , `FILE_MARKED_MALICIOUS` , `FILE_WATERMARKED_DOWNLOAD` , `GROUP_ADD_ITEM` , `GROUP_ADD_USER` , `GROUP_CREATION` , `GROUP_DELETION` , `GROUP_EDITED` , `GROUP_REMOVE_ITEM` , `GROUP_REMOVE_USER` , `ITEM_COPY` , `ITEM_CREATE` , `ITEM_DOWNLOAD` , `ITEM_MAKE_CURRENT_VERSION` , `ITEM_MODIFY` , `ITEM_MOVE` , `ITEM_OPEN` , `ITEM_PREVIEW` , `ITEM_RENAME` , `ITEM_SHARED` , `ITEM_SHARED_CREATE` , `ITEM_SHARED_UNSHARE` , `ITEM_SHARED_UPDATE` , `ITEM_SYNC`

https://developer.box.com/reference/resources/event/: (last visited December 16, 2021)

38.    The second application (*e.g.*, Box software application running on the first client device) automatically transfers the copy of the modified first file to the first electronic device (*e.g.*, the server system) upon determining that a save operation has been performed on the modified first electronic file.

39.    The first electronic device (*e.g.*, the server system) is further configured to receive from a third application (*e.g.*, BoxSync) executable on the third electronic device (*e.g.*, the second client device) a copy of a second file automatically transferred from the third application when the user modifies a content of the second electronic file, and automatically transfer the modified second file copy to the second electronic device (*e.g.*, the first client device) to replace

an older version of the second file stored on the second electronic device with the modified
second electronic file copy having the content modified by the user.

40.     On information and belief, Box has directly infringed and continues to infringe,
literally and/or under the doctrine of equivalents, one or more claims of the '561 Patent under 35
U.S.C. § 271(a) by developing, manufacturing, distributing, operating, using, selling, and/or
offering to sell Box products and services in the United States and abroadwithout authority.
Included in these acts of infringement are situations where devices owned by users and
customers of Box products and services interact with Box servers to perform file sync
operations.

41.     On information and belief, Box is liable for infringement, literally and/or under
the doctrine of equivalents, of one or more claims of the '561 Patent under 35 U.S.C. § 271(b)
based on its active marketing and promotion of its Box products and services in the United States
to its customers and prospective customers.  On information and belief Box has, and will
continue to, intentionally encourage acts of direct infringement with knowledge of the '561
Patent and knowledge that its acts are encouraging infringement.

42.     On information and belief, Box is liable for infringement, literally and/or under
the doctrine of equivalents, of one or more claims of the '561 Patent under 35 U.S.C. § 271(c),
because Box has had, and continues to have, knowledge that its Box products are especially
developed or adapted for a use that infringes the '561 Patent and constitute a material part of the
claimed systems and methods.  Box has had, and continues to have, knowledge that there are no
substantial non-infringing uses for these Products. Box has infringed and continues to infringe
the '561 Patent directly and/or indirectly in violation of 35 U.S.C. § 271(c).

**DEFENDANT SAILPOINT**

43.      SailPoint makes and sells valued added integration services and products for Box's online document storage and synchronization products and services, including those products and services that infringe Plaintiff's patents identified above, through Box's online platforms and mobile applications to customers, which practice each and every limitation of one or more claims of the '561 patent.

44.      More specifically, SailPoint's Identity Governance Platform provides identity governance solutions that are integrated with Box products and services, enabling users of Box products and services to, among other things, control user access, identify sensitive data, and monitor for malicious behavior.









https://www.sailpoint.com/integrations/box/ (last visited December 16, 2021)

45.     On information and belief, SailPoint, in order to develop, support, and provide its identity governance solutions, has directly infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '561 Patent under 35 U.S.C. § 271(a) by using Box products and services in the United States and abroad without authority. Included in these acts of infringement are situations where devices associated with SailPoint interact with Box servers to perform file sync operations.

## DEFENDANT VISTRA

46.     Vistra uses Box's online document storage and synchronization products and services, including those products and services that infringe Plaintiff's patents identified above, through Box's online platforms and mobile applications to customers, which practice each and every limitation of one or more claims of the '561 patent.

47.     On its website, Box identifies Vistra as a user of Box's products and services.

**PROBLEM**

Vistra Energy is growing quickly through both organic means and acquisitions. Over an 18-month period, Vistra expanded from operating in Texas to 20 states, the District of Columbia, Japan, and Canada. Rapid growth makes for rapidly changing processes as a diverse workforce assembles across geographic locations.

**SOLUTION**

By migrating content to the cloud on a central platform with Box, Vistra can now leverage Box Keysafe to create consistent processes and better secure data — even at sensitive locations like nuclear facilities and during the acquisition planning phase of an M&A effort. Putting Box Governance in place is giving Vistra even more control over content.

**OUTCOME**

Box gives Vistra's workforce the user experience they expect and has saved the company money as it's retired expensive subscription-based tools. Processes across lines of business are now poised for automation, and all content is in compliance with FedRAMP and other regulations. Plus, cloud-based infrastructure means content processes scale as the company grows.

Technology has gradually been transitioning the entire workforce over to one central content platform with which a lot of the existing collaboration tools integrate well: Box.

"Box started as a grassroots effort by some of the folks on our political affairs team in order to share information with external consultants," Pelosi explains. "But as additional folks heard it was there, it became, 'Oh!, we could also use that for other teams.'"

The initial Box test case of about 250 people was so successful that, within a year, the number of users had bumped up to 1,000. Now, when Vistra acquires a new team, incoming employees are given "birthright access" to Box on day one. This practice is scaling up the number of Box users dramatically, and Box has become the de facto content layer of the company's digital work processes.

> An early group that migrated to Box was a marketing team using an expensive file-sharing tool for digital asset management. The tool was robust, but it wasn't delivering a lot of value because the team simply didn't use most of its features. IT helped the team move their entire repository of graphical assets to the cloud into Box, saving the company a tremendous amount of money in subscription costs for an underutilized file-sharing tool.
>
> The regulatory response organization within Vistra has to keep a close eye on governance and retention policies, and over time, their network shared drive space had run out. Accessing files on this drive was not easy, either, since users had to be onsite and connected to the network. IT migrated these assets to Box, using Box Governance to better manage content and stay in compliance.

https://www.box.com/customers/vistra-energy (last visited December 16, 2021)

48.     On information and belief, Vistra has directly infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '561 Patent under 35 U.S.C. § 271(a) by using Box products and services in the United States and abroad without authority.  Included in these acts of infringement are situations where devices associated with Vistra interact with Box servers to perform file sync operations.

## COUNT TWO

## INFRINGEMENT OF U.S. PATENT NO. 10,006,942

49.     Plaintiff incorporates paragraphs 1 through 48 as though fully set forth herein.

50.     Plaintiff is the owner, by assignment of U.S. Patent No. 10,067,942 (the "'942 Patent"), entitled "Architecture For Management of Digital Files Across Distributed Network," issued on September 4, 2018. A copy of the '942 Patent is attached as Exhibit 2.

51.     The '942 Patent is generally directed to systems and methods for sharing electronic files between multiple devices, wherein when a user modifies an electronic file on a device, a copy of the modified electronic file is automatically transferred to other devices based on a communication state of the other devices.

52.     Plaintiff is the owner by assignment of all rights, title, and interest in and to the '942 Patent, including the right to assert all causes of action arising under the '942 Patent and the right to all remedies for the infringement of the '942 Patent.

53.     For example, claim 1 of the '942 Patent states:

1. A system, comprising:

a first electronic device, associated with a user, configured to:

receive, via a first application at the first electronic device, a copy of a modified first electronic file from a second application at a second electronic device associated with the user, wherein the modified first electronic file copy is automatically received from the second application responsive to the user modifying a content of the first electronic file;

determine whether the first electronic device is in communication with a third electronic device;

automatically send, via the first application, the modified first electronic file copy to a third application at the third electronic device responsive to the determination that the first electronic device is in communication with the third electronic device and responsive to receiving the modified first electronic file copy from the second electronic device;

receive, via the first application, a copy of a modified second electronic file from the third application at the third electronic device associated with the user, wherein the modified second electronic file copy is automatically received from the third application responsive to the user modifying a content of the second electronic file;

determine whether the first electronic device is in communication with the second electronic device; and

automatically send, via the first application, the modified second electronic file copy to the second application at the second electronic device responsive to the determination that the first electronic device is in communication with the second electronic device and responsive to receiving the modified second electronic file copy from the third electronic device,

wherein, responsive to sending the modified first electronic file copy to the third electronic device, an older version of the first electronic file stored on the third electronic device is automatically caused to be replaced with the modified first electronic file copy such that the modified first electronic file copy is stored on the third electronic device in lieu of the older version of the first electronic file, and

wherein, responsive to sending the modified second electronic file copy to the second electronic device, an older version of the second electronic file stored on the second electronic device is automatically caused to be replaced with the modified second electronic file copy such that the modified second electronic file copy is stored on the second electronic device in lieu of the older version of the second electronic file.

## **DEFENDANT BOX**

54.     In addition to the description in paragraphs 25-42, Box's products and services include systems and methods for sharing electronic files between multiple client devices, wherein when a user modifies an electronic file on a device, a copy of the modified electronic

file is automatically transferred to other devices based on a communication state of the other devices.

55.     The first electronic device (*e.g.*, the server system) is configured to determine whether the first electronic device is in communication with a third electronic device (*e.g.*, the second client device such as a laptop or a smart phone). Box's server and client software will determine that the server is in contact with a client.  Box determines if a device is online:



[https://support.box.com/hc/en-us/articles/360043697574-Making-Content-Available-Offline](https://support.box.com/hc/en-us/articles/360043697574-Making-Content-Available-Offline):

(last visited December 16, 2021)

56.     The first electronic device (*e.g.*, the server system) is configured to automatically send, via the first application (*e.g.*, application running on the server system), the modified first electronic file copy to a third application at the third electronic device (*e.g.*, the second client device) responsive to the determination that the first electronic device is in communication with the third electronic device and responsive to receiving the modified first electronic file copy from the second electronic device (*e.g.*, the first client device). The Box server system will

automatically send the modified file copy to the client device responsive to the determination that the client device is connected to the Box server system and responsive to changes to the file in another client device:

**Marking Content for Offline Use**

You can also mark content in Box Drive to make it available offline. Drive downloads this content to your device's hard drive so you can work when you're not connected to the Internet. When you get back online, Drive automatically uploads the revised content, so you are always working with the most up-to-date versions of your files. More information about making content available offline.

https://support.box.com/hc/en-us/articles/360043697494-Using-Box-Drive-Basics: (last visited December 16, 2021)

57.     Additionally, using the Box API, a third party application can subscribe to be notified of events, such as file modification, and can respond by downloading a copy of the modified file:

**Events**

The event feed provides a way for an application to subscribe to any actions performed by any user or users in an enterprise.

**User events**

User Events provide low latency stream of events for the currently authenticated user.

**Admin events**

Admin Events provide an event feed for all users and content in an enterprise.

https://developer.box.com/guides/events/: (last visited December 16, 2021)

**Long-Poll Events**

To get real-time notification of activity in a Box account you can use the long poll feature of the `OPTIONS /events` API.

33

## Long Polling

Long polling involves opening an HTTP request and keeping it open until the server sends a response, then repeating the process over and over to receive updated responses.

https://developer.box.com/guides/events/polling/: (last visited December 16, 2021)



```
event_type    string

example    FILE_MARKED_MALICIOUS

The event type that triggered this event

Value is one of   ACCESS_GRANTED ,   ACCESS_REVOKED ,   ADD_DEVICE_ASSOCIATION ,
  ADD_LOGIN_ACTIVITY_DEVICE ,   ADMIN_LOGIN ,   APPLICATION_CREATED ,
  APPLICATION_PUBLIC_KEY_ADDED ,   APPLICATION_PUBLIC_KEY_DELETED ,
  CHANGE_ADMIN_ROLE ,   CHANGE_FOLDER_PERMISSION ,   COLLABORATION_ACCEPT ,
  COLLABORATION_EXPIRATION ,   COLLABORATION_INVITE ,   COLLABORATION_REMOVE ,
  COLLABORATION_ROLE_CHANGE ,   COLLAB_ADD_COLLABORATOR ,
  COLLAB_INVITE_COLLABORATOR ,   COLLAB_REMOVE_COLLABORATOR ,   COLLAB_ROLE_CHANGE ,
  COMMENT_CREATE ,   COMMENT_DELETE ,   CONTENT_ACCESS ,
  CONTENT_WORKFLOW_ABNORMAL_DOWNLOAD_ACTIVITY ,   CONTENT_WORKFLOW_AUTOMATION_ADD ,
  CONTENT_WORKFLOW_AUTOMATION_DELETE ,   CONTENT_WORKFLOW_POLICY_ADD ,
  CONTENT_WORKFLOW_SHARING_POLICY_VIOLATION ,
  CONTENT_WORKFLOW_UPLOAD_POLICY_VIOLATION ,   COPY ,
  DATA_RETENTION_CREATE_RETENTION ,   DATA_RETENTION_REMOVE_RETENTION ,   DELETE ,
  DELETE_USER ,   DEVICE_TRUST_CHECK_FAILED ,   DOWNLOAD ,   EDIT ,   EDIT_USER ,
  EMAIL_ALIAS_CONFIRM ,   EMAIL_ALIAS_REMOVE ,   ENABLE_TWO_FACTOR_AUTH ,
  ENTERPRISE_APP_AUTHORIZATION_UPDATE ,   FAILED_LOGIN ,   FILE_MARKED_MALICIOUS ,
  FILE_WATERMARKED_DOWNLOAD ,   GROUP_ADD_ITEM ,   GROUP_ADD_USER ,   GROUP_CREATION ,
  GROUP_DELETION ,   GROUP_EDITED ,   GROUP_REMOVE_ITEM ,   GROUP_REMOVE_USER ,
  ITEM_COPY ,   ITEM_CREATE ,   ITEM_DOWNLOAD ,   ITEM_MAKE_CURRENT_VERSION ,
  ITEM_MODIFY ,   ITEM_MOVE ,   ITEM_OPEN ,   ITEM_PREVIEW ,   ITEM_RENAME ,   ITEM_SHARED ,
  ITEM_SHARED_CREATE ,   ITEM_SHARED_UNSHARE ,   ITEM_SHARED_UPDATE ,   ITEM_SYNC ,
```

https://developer.box.com/reference/resources/event/: (last visited December 16, 2021)

58.     On information and belief, Box has directly infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '942 Patent under 35 U.S.C. § 271(a) by developing, manufacturing, distributing, operating, using, selling, and/or offering to sell Box products and services in the United States without authority.

59.     On information and belief, Box is liable for infringement, literally and/or under the doctrine of equivalents, of one or more claims of the '942 Patent under 35 U.S.C. § 271(b) based on its active marketing and promotion of its Box products and services in the United States

to its customers and prospective customers. On information and belief Box has, and will continue to, intentionally encourage acts of direct infringement with knowledge of the '942 Patent and knowledge that its acts are encouraging infringement.

60. On information and belief, Box is liable for infringement, literally and/or under the doctrine of equivalents, of one or more claims of the '942 Patent under 35 U.S.C. § 271(c), because Box has had, and continues to have, knowledge that its Box products are especially developed or adapted for a use that infringes the '942 Patent and constitute a material part of the claimed systems and methods. Box has had, and continues to have, knowledge that there are no substantial non-infringing uses for these Products. Box has infringed and continues to infringe the '942 Patent directly and/or indirectly in violation of 35 U.S.C. § 271(c).

## DEFENDANT SAILPOINT

61. SailPoint makes and sells valued added integration services and products for Box's online document storage and synchronization products and services, including those products and services that infringe Plaintiff's patents identified above, through Box's online platforms and mobile applications to customers, which practice each and every limitation of one or more claims of the '942 patent.

62. More specifically, SailPoint's Identity Governance Platform provides identity governance solutions that are integrated with Box products and services, enabling users of Box products and services to, among other things, control user access, identify sensitive data, and monitor for malicious behavior.

# How does SailPoint integrate with Box?

SailPoint collects and analyzes the data and file permissions in Box to identify sensitive data and who has access to it. We can also alert you about inappropriate access to help you maintain security.

**Examples**



Data discovery and classification ▸

Permission analysis ▸

Access monitoring and alerting ▸

# Do you have files in Box that could be a compliance risk?

SailPoint's integration with Box helps you identify sensitive information, manage data ownership and alert you to any suspicious access activity. As more people collaborate and share information in the cloud, protecting access to your Box files has never been more important.

- Find and address your compliance gaps
- Ensure consistent governance across all data types
- Be alerted if inappropriate access is detected
- Minimize exposure to data leakage



**Learn more**

How identity governance helps ensure GDPR compliance ▸

Governing unstructured data and data access ▸

Watch our Box integration demo ▸



Identify where sensitive data resides in Box

Classify and analyze data based on content and behavior

https://www.sailpoint.com/integrations/box/ (last visited December 16, 2021)

36

63. On information and belief, SailPoint, in order to develop, support, and provide its identity governance solutions, has directly infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '942 Patent under 35 U.S.C. § 271(a) by using Box products and services in the United States and abroad without authority. Included in these acts of infringement are situations where devices associated with SailPoint interact with Box servers to perform file sync operations.

## **DEFENDANT VISTRA**

64. Vistra uses Box's online document storage and synchronization products and services, including those products and services that infringe Plaintiff's patents identified above, through Box's online platforms and mobile applications to customers, which practice each and every limitation of one or more claims of the '942 patent.

65. On its website, Box identifies Vistra as a user of Box's products and services.

**PROBLEM**

Vistra Energy is growing quickly through both organic means and acquisitions. Over an 18-month period, Vistra expanded from operating in Texas to 20 states, the District of Columbia, Japan, and Canada. Rapid growth makes for rapidly changing processes as a diverse workforce assembles across geographic locations.

**SOLUTION**

By migrating content to the cloud on a central platform with Box, Vistra can now leverage Box Keysafe to create consistent processes and better secure data — even at sensitive locations like nuclear facilities and during the acquisition planning phase of an M&A effort. Putting Box Governance in place is giving Vistra even more control over content.

**OUTCOME**

Box gives Vistra's workforce the user experience they expect and has saved the company money as it's retired expensive subscription-based tools. Processes across lines of business are now poised for automation, and all content is in compliance with FedRAMP and other regulations. Plus, cloud-based infrastructure means content processes scale as the company grows.

Technology has gradually been transitioning the entire workforce over to one central content platform with which a lot of the existing collaboration tools integrate well: Box.

"Box started as a grassroots effort by some of the folks on our political affairs team in order to share information with external consultants," Pelosi explains. "But as additional folks heard it was there, it became, 'Oh!, we could also use that for other teams.'"

The initial Box test case of about 250 people was so successful that, within a year, the number of users had bumped up to 1,000. Now, when Vistra acquires a new team, incoming employees are given "birthright access" to Box on day one. This practice is scaling up the number of Box users dramatically, and Box has become the de facto content layer of the company's digital work processes.

An early group that migrated to Box was a marketing team using an expensive file-sharing tool for digital asset management. The tool was robust, but it wasn't delivering a lot of value because the team simply didn't use most of its features. IT helped the team move their entire repository of graphical assets to the cloud into Box, saving the company a tremendous amount of money in subscription costs for an underutilized file-sharing tool.

The regulatory response organization within Vistra has to keep a close eye on governance and retention policies, and over time, their network shared drive space had run out. Accessing files on this drive was not easy, either, since users had to be onsite and connected to the network. IT migrated these assets to Box, using Box Governance to better manage content and stay in compliance.

https://www.box.com/customers/vistra-energy (last visited December 16, 2021)

66.     On information and belief, Vistra has directly infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '942 Patent under 35 U.S.C. § 271(a) by using Box products and services in the United States and abroad without authority.  Included in these acts of infringement are situations where devices associated with Vistra interact with Box servers to perform file sync operations.

**COUNT THREE**

**INFRINGEMENT OF U.S. PATENT NO. 10,289,607**

67.     Plaintiff incorporates paragraphs 1 through 66 as though fully set forth herein.

68.     Plaintiff is the owner, by assignment of U.S. Patent No. 10,289,607 (the "'607 Patent"), entitled "Architecture For Management of Digital Files Across Distributed Network" issued on May 14, 2019. A copy of the '607 Patent is attached as Exhibit 3.

69.     The '607 Patent is generally directed to systems and methods for sharing electronic files between multiple devices, wherein when a user modifies an electronic file on a device, a copy of the modified electronic file is automatically transferred to other devices, and wherein metadata associated with the modified electronic file is assigned a greater priority than

the copy of the modified electronic file, and the metadata is automatically transferred to the other devices prior to the copy of the modified electronic file.

70.     Plaintiff is the owner by assignment of all rights, title, and interest in and to the '607 Patent, including the right to assert all causes of action arising under the '607 Patent and the right to all remedies for the infringement of the '607 Patent.

71.     For example, claim 1 of the '607 Patent states:

1. A system, comprising:

server system comprising one or more processors programmed with computer program instructions that, when executed, cause the server system to:

receive, over a network, a copy of a first file from a first client device associated with a user, wherein the copy of the first file is automatically received from the first client device responsive to the user modifying a content of the first file stored on the first client device, the copy of the first file being a version of the first file that is generated from the user modifying the content of the first file;

receive, from the first client device, first metadata associated with the version of the first file that is generated from the user modifying the content of the first file, the first metadata being assigned a first priority greater than a second priority assigned to the copy of the first file;

determine that the server system is not in communication with a second client device associated with the user;

store the copy of the first file on the server system;

automatically transfer the first metadata to the second client device based on the first priority being greater than the second priority such that the first metadata

is transferred to the second client device prior to the copy of the first file being transferred to the second client device; and

automatically transfer, over a network, the copy of the first file to the second client device associated with the user to replace an older version of the first file stored on the second client device, responsive to (i) resuming communication with the second client device and (ii) receiving the copy of the first file from the first client device.

**DEFENDANT BOX**

72.    In addition to the description in paragraphs 54-60, Box products and services include systems and methods for sharing electronic files between multiple devices, wherein when a user modifies an electronic file on a device, a copy of the modified electronic file is automatically transferred to other devices, and wherein metadata associated with the modified electronic file is assigned a greater priority than the copy of the modified electronic file, and the metadata is automatically transferred to the other devices prior to the copy of the modified electronic file.

73.    Box tracks and stores multiple types of metadata associated with stored files:



https://support.box.com/hc/en-us/articles/360044196173-Using-Metadata: (last visited December 16, 2021)

## Metadata

Metadata allows users and applications to define and store custom data associated with files and folders.

Metadata consists of key/value pairs that are assigned to a file or a folder. For example, an important contract may have the key/value pairs of `clientNumber: 820183` and `clientName: bioMedicalCorp`.

## Metadata terminology

Working with metadata requires a developer to work with a few distinct types of resources.



- Templates: A metadata template describes a re-usable set of key/value pairs that can be assigned to a file. For example, an `invoiceData` template might hold data about an invoice, having a field for the invoice ID as well as the customer ID.

  - Fields: A metadata template field describes a specific piece of data within a metadata template. For example, the ID of an invoice might be represented as an `id` field on an `invoiceData` template.

- Instances: A metadata instance describes the relation between a template and a file or folder, including the values that are assigned for every field. For example, a user might have assigned an `invoiceData` metadata template to a file and provided 2 values, one for the invoice ID and one for the customer ID.

- Cascade Policies: A metadata cascade policy describes how metadata instances applied to a folder should be applied to any item within that folder. For example, a user might assign the same `invoiceData` metadata template to a project folder (including the 2 values), allowing them to automatically apply to all the files and folders within that project folder.

- Queries: A metadata query provides a way to find files and folders by searching for the metadata attached to them. For example, to find the all files for an invoice with a certain ID, the query would look for all files and folders with the `invoiceData` template attached to it and a value of `id = :id`, where `:id` would be the value of the invoice.

https://developer.box.com/guides/metadata/: (last visited December 16, 2021)

## File

A full representation of a file, as can be returned from any file API endpoints by default

**etag** `string`

example `1`

The HTTP `etag` of this file. This can be used within some API endpoints in the `If-Match` and `If-None-Match` headers to only perform changes on the file if (no) changes have happened.

---

**id** `string`

example `12345`

The unique identifier that represent a file.

The ID for any file can be determined by visiting a file in the web application and copying the ID from the URL. For example, for the URL `https://*.app.box.com/files/123` the `file_id` is `123`.

---

**name** `string`

example `Contract.pdf`

The name of the file

---

**sequence_id** `string`

example `3`

A numeric identifier that represents the most recent user event that has been applied to this item.

This can be used in combination with the `GET /events` -endpoint to filter out user events that would have occurred before this identifier was read.

An example would be where a Box Drive-like application would fetch an item via the API, and then listen to incoming user events for changes to the item. The application would ignore any user events where the `sequence_id` in the event is smaller than or equal to the `sequence_id` in the originally fetched resource.

---

**allowed_invitee_roles** `string array`

example `["editor"]`

A list of the types of roles that user can be invited at when sharing this file.

---

**content_created_at** `string / date-time`

example `2012-12-12T10:53:43-08:00`

The date and time at which this file was originally created, which might be before it was uploaded to Box.

---

**content_modified_at** `string / date-time`

example `2012-12-12T10:53:43-08:00`

The date and time at which this folder was last updated, which might be before it was uploaded to Box.

---

**created_at** `string / date-time`

example `2012-12-12T10:53:43-08:00`

The date and time when the file was created on Box.

**created_by** User (Mini) object

The user who created this file

**description** string

example `Contract for Q1 renewal` Max Length `256`

The optional description of this file

**file_version** File version (Mini) object

The information about the current version of the file.

**has_collaborations** boolean

example `true`

Specifies if this folder has any other collaborators.

**is_externally_owned** boolean

example `true`

Specifies if this folder is owned by a user outside of the authenticated enterprise.

**item_status** string

example `active`

Defines if this item has been deleted or not.

- `active` when the item has is not in the trash
- `trashed` when the item has been moved to the trash but not deleted
- `deleted` when the item has been permanently deleted.

Value is one of `active`, `trashed`, `deleted`

**modified_at** string / date-time

example `2012-12-12T10:53:43-08:00`

The date and time when the folder was last updated on Box.

**modified_by** User (Mini) object

The user who last modified this file

**owned_by** User (Mini) object

The user who owns this file

**parent** Folder (Mini) object

The folder that this file is located within.



https://developer.box.com/reference/resources/file/: (last visited December 16, 2021)

74.     When a file is modified, the file's metadata is uploaded to Box's servers with a higher priority than the file contents:

## Working in Finder

If you use a Mac, you can access Box Drive by opening Finder. In the sidebar, navigate to **Devices** > **Favorites** > **Box**. Open this folder to display all of the contents of your **All Files** page on Box.com. You can navigate through any folder and open every file you see just as if it were a local file.

For each file in the Box folder, Box Drive displays these standard properties:

- File name
- File size
- File type
- Date created (more information on Box timestamps)
- Date modified (more information on Box timestamps)

The blue cloud icon beside a file or folder indicates the item is safely stored and up to date in Box. Add or update a file or folder in Box Drive, and the icon changes to an orange syncing icon. The icon also displays as syncing when Box Drive is uploading changes you made to files offline. When the sync completes the icon resets to the blue cloud.



## Working in Explorer

If you use Windows, you can access Box Drive by opening Explorer and navigating to the folder named Box. Open this folder to display all of the contents of your All Files page on Box.com. You can navigate through any folder and open every file you see just as if it were a local file.

For each file in the Box folder, Box Drive displays these standard properties:

- File name
- File size
- File type
- Date created (more information on Box timestamps)
- Date modified (more information on Box timestamps)

The blue cloud icon beside a file or folder indicates the item is safely stored and up to date in Box. Add or update a file or folder in Box Drive, and the icon changes to an orange syncing icon. The icon also displays as syncing when Box Drive is uploading changes you made to files offline. When the sync completes the icon resets to the blue cloud.



## Working with Other Applications

Working with Box files in other applications such as Word or Excel is seamless. Open the file from Box Drive and work with it as you usually would. When you're done, save the file. The file automatically syncs back to Box. You can also use Save As to save the file to a new location, save the file with a new name, or create new folders to store your file. All of those changes save automatically in Box.

## Marking Content for Offline Use

You can also mark content in Box Drive to make it available offline. Drive downloads this content to your device's hard drive so you can work when you're not connected to the Internet. When you get back online, Drive automatically uploads the revised content, so you are always working with the most up-to-date versions of your files. More information about making content available offline.

https://support.box.com/hc/en-us/articles/360043697494-Using-Box-Drive-Basics: (last visited December 16, 2021)

## Making Content Available Offline

3 months ago · Updated

With Box Drive's Mark for Offline feature, your Box cloud content is available wherever you are - in a remote office, traveling on a plane, and so on - regardless of internet connectivity. Just select the Box folders you need access to, and Box Drive automatically downloads all of the folder contents to your computer. If you or someone else make changes to this content while you're offline, Box Drive automatically uploads the revised content when you are back online so you are always working with the most up-to-date versions of your files.



Box Drive immediately begins downloading the contents of this folder to your device. As files and folders download, they display with an orange **Pending** icon, meaning they are in the process of being downloaded. When items finish downloading they display with a green **Available Offline** icon.

Available
online only

Available
offline

Pending

If the download or upload process is lengthy, you do not have to wait for it to finish before you can continue working. The process continues in the background as long as Box Drive is running and you are online. You can turn off your computer, quit Box Drive, or go offline while a download or upload is in progress, Whenever you come back online, Box Drive continues right where it left off.

https://support.box.com/hc/en-us/articles/360043697574-Making-Content-Available-Offline:

(last visited December 16, 2021)

75.     On information and belief, Box has directly infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '607 Patent under 35 U.S.C. § 271(a) by developing, manufacturing, distributing, operating, using, selling, and/or offering to sell Box products and services in the United States without authority.

76.     On information and belief, Box is liable for infringement, literally and/or under the doctrine of equivalents, of one or more claims of the '607 Patent under 35 U.S.C. § 271(b) based on its active marketing and promotion of its Box products and services in the United States to its customers and prospective customers.  On information and belief Box has, and will continue to, intentionally encourage acts of direct infringement with knowledge of the '607 Patent and knowledge that its acts are encouraging infringement.

77.     On information and belief, Box is liable for infringement, literally and/or under the doctrine of equivalents, of one or more claims of the '607 Patent under 35 U.S.C. § 271(c), because Box has had, and continues to have, knowledge that its Box products are especially developed or adapted for a use that infringes the '607 Patent and constitute a material part of the

claimed systems and methods. Box has had, and continues to have, knowledge that there are no substantial non-infringing uses for these Products. Box has infringed and continues to infringe the '607 Patent directly and/or indirectly in violation of 35 U.S.C. § 271(c).

## DEFENDANT SAILPOINT

78.     SailPoint makes and sells valued added integration services and products for Box's online document storage and synchronization products and services, including those products and services that infringe Plaintiff's patents identified above, through Box's online platforms and mobile applications to customers, which practice each and every limitation of one or more claims of the '607 patent.

79.     More specifically, SailPoint's Identity Governance Platform provides identity governance solutions that are integrated with Box products and services, enabling users of Box products and services to, among other things, control user access, identify sensitive data, and monitor for malicious behavior.

# How does SailPoint integrate with Box?

SailPoint collects and analyzes the data and file permissions in Box to identify sensitive data and who has access to it. We can also alert you about inappropriate access to help you maintain security.

## Examples

| Data discovery and classification ▶ |
| --- |

| Permission analysis ▶ |
| --- |

| Access monitoring and alerting ▶ |
| --- |

# Do you have files in Box that could be a compliance risk?

SailPoint's integration with Box helps you identify sensitive information, manage data ownership and alert you to any suspicious access activity. As more people collaborate and share information in the cloud, protecting access to your Box files has never been more important.

- Find and address your compliance gaps
- Ensure consistent governance across all data types
- Be alerted if inappropriate access is detected
- Minimize exposure to data leakage



## Learn more

| 📄 How identity governance helps ensure GDPR compliance ▶ |
| --- |

| 📄 Governing unstructured data and data access ▶ |
| --- |

| ▶️ Watch our Box integration demo ▶ |
| --- |



Identify where sensitive data resides in Box

Classify and analyze data based on content and behavior

https://www.sailpoint.com/integrations/box/ (last visited December 16, 2021)

80.     On information and belief, SailPoint, in order to develop, support, and provide its identity governance solutions, has directly infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '607 Patent under 35 U.S.C. § 271(a) by using Box products and services in the United States and abroad without authority. Included in these acts of infringement are situations where devices associated with SailPoint interact with Box servers to perform file sync operations.

## DEFENDANT VISTRA

81.     Vistra uses Box's online document storage and synchronization products and services, including those products and services that infringe Plaintiff's patents identified above, through Box's online platforms and mobile applications to customers, which practice each and every limitation of one or more claims of the '607 patent.

82.     On its website, Box identifies Vistra as a user of Box's products and services.

**PROBLEM**

Vistra Energy is growing quickly through both organic means and acquisitions. Over an 18-month period, Vistra expanded from operating in Texas to 20 states, the District of Columbia, Japan, and Canada. Rapid growth makes for rapidly changing processes as a diverse workforce assembles across geographic locations.

**SOLUTION**

By migrating content to the cloud on a central platform with Box, Vistra can now leverage Box Keysafe to create consistent processes and better secure data — even at sensitive locations like nuclear facilities and during the acquisition planning phase of an M&A effort. Putting Box Governance in place is giving Vistra even more control over content.

**OUTCOME**

Box gives Vistra's workforce the user experience they expect and has saved the company money as it's retired expensive subscription-based tools. Processes across lines of business are now poised for automation, and all content is in compliance with FedRAMP and other regulations. Plus, cloud-based infrastructure means content processes scale as the company grows.

Technology has gradually been transitioning the entire workforce over to one central content platform with which a lot of the existing collaboration tools integrate well: Box.

"Box started as a grassroots effort by some of the folks on our political affairs team in order to share information with external consultants," Pelosi explains. "But as additional folks heard it was there, it became, 'Oh!, we could also use that for other teams.'"

The initial Box test case of about 250 people was so successful that, within a year, the number of users had bumped up to 1,000. Now, when Vistra acquires a new team, incoming employees are given "birthright access" to Box on day one. This practice is scaling up the number of Box users dramatically, and Box has become the de facto content layer of the company's digital work processes.

An early group that migrated to Box was a marketing team using an expensive file-sharing tool for digital asset management. The tool was robust, but it wasn't delivering a lot of value because the team simply didn't use most of its features. IT helped the team move their entire repository of graphical assets to the cloud into Box, saving the company a tremendous amount of money in subscription costs for an underutilized file-sharing tool.

The regulatory response organization within Vistra has to keep a close eye on governance and retention policies, and over time, their network shared drive space had run out. Accessing files on this drive was not easy, either, since users had to be onsite and connected to the network. IT migrated these assets to Box, using Box Governance to better manage content and stay in compliance.

https://www.box.com/customers/vistra-energy (last visited December 16, 2021)

83.     On information and belief, Vistra has directly infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '607 Patent under 35 U.S.C. § 271(a) by using Box products and services in the United States and abroad without authority.  Included in these acts of infringement are situations where devices associated with Vistra interact with Box servers to perform file sync operations.


**COUNT FOUR**

**INFRINGEMENT OF U.S. PATENT NO. 10,642,787**

84.     Plaintiff incorporates paragraphs 1 through 83 as though fully set forth herein.

85.     Plaintiff is the owner, by assignment of U.S. Patent No. 10,642,787 (the "'787 Patent"), entitled "Pre-file-transfer update based on prioritized metadata" issued on May 5, 2020. A copy of the '787 Patent is attached as Exhibit 4.

86.     The '787 Patent is generally directed to systems and methods for sharing electronic files between multiple devices, wherein when a user modifies an electronic file on a device, metadata associated with the modified electronic file is automatically transferred to other devices with higher priority before a copy of the modified electronic file is transferred to the

other devices, which causes a user interface of the other devices to indicate the updated version of the modified electronic file.

87.     Plaintiff is the owner by assignment of all rights, title, and interest in and to the '787 Patent, including the right to assert all causes of action arising under the '787 Patent and the right to all remedies for the infringement of the '787 Patent.

88.     For example, claim 1 of the '787 Patent states:

1.     A system comprising:

a server system comprising one or more processors programmed with computer program instructions that, when executed, cause the server system to:

receive, over a network, a copy of a first file from a first client device associated with a user, wherein the copy of the first file is automatically received from the first client device responsive to the user modifying a content of the first file stored on the first client device, the copy of the first file being an updated version of the first file that is generated from the user modifying the content of the first file;

receive, over a network, from the first client device, first metadata associated with the updated version of the first file that is generated from the user modifying the content of the first file, the first metadata being assigned a first priority greater than a second priority assigned to the copy of the first file; and

automatically transfer, based on the first priority being greater than the second priority, the first metadata over a network to a second client device associated with the user such that the first metadata is transferred to the second client device before the copy of the first file is transferred to the second client device,

wherein, before the copy of the first file is transferred to the second client device:

    (i) the transfer of the first metadata to the second client device causes a file representation of the first file presented on a user interface of the second client device to be updated based on the first metadata, and

    (ii) instead of the updated file representation of the first file representing a version of the first file currently stored on the second client device, the updated file representation represents the updated version of the first file that is currently stored on the first client device and not currently stored on the second client device, and

wherein at least one of the server system or the first client device comprises a priority assignment configuration to assign greater priority to metadata associated with files than priority assigned to the files such that at least one of the server system or the first client device assigns the first priority to the first metadata and the second priority to the copy of the first file based on the priority assignment configuration.

## **DEFENDANT BOX**

89.    In addition to the description in paragraphs 72-77, Box's server system comprises one or more processors running Box server software, and Box's file sharing software running on a first client device and a second client device configure the first client device and the second client device to sync with each other. When a user modifies a content of a first file stored on the first client device, Box's server system receives metadata, with higher priority, about the modified first file from the first client device, and automatically transfers the metadata to the second client device before a copy of the modified first file, with lower priority, is transferred to the second client device.

90.     Based on the higher-priority metadata transferred from the Box server system to the second client device, a file representation of the first file presented on a Box user interface of the second client device is updated, before the copy of the modified first file is transferred to the second client device. The updated file representation represents the updated version of the first file that is currently stored on the first client device and not currently stored on the second client device.

91.     Based on the metadata being assigned higher priority than the copy of the first file, the status of Box Sync or Box Drive folder at the first client device is updated before the modified file is uploaded to the Box's servers. Box provides the following icons that indicate the status of the files and folders:





https://support.box.com/hc/en-us/articles/360043697494-Using-Box-Drive-Basics (last

visited December 16, 2021)

https://support.box.com/hc/en-us/articles/360043697574-Making-Content-Available-Offline

(last visited December 16, 2021)

92.     When the modified file is uploaded to the Box's server system, Box's server

system first transfers the metadata associated with the modified file to the second client device to

notify that there is an updated version of the file that is available for download. Box displays a

dialog box with a refresh button to prompt the user to download the new version of the file. Once

the Box page is refreshed, the updated version is downloaded to the second client device.  See

e.g., the following screenshot image of a personal Box account user:



A new version of "Presentation2.pptx" was just uploaded. Would you like to refresh the page?

93.     As described previously, Box's server system has a configuration to assign greater priority to metadata than priority assigned to the files.  Box's notification system enforces a priority system where changes to file metadata are propagated faster than, and downloaded by other client devices before, changes to file content.

94.     On information and belief, Box has directly infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '787 Patent under 35 U.S.C. § 271(a) by developing, manufacturing, distributing, operating, using, selling, and/or offering to sell Box products and services in the United States without authority.  Included in these acts of infringement are situations where devices owned by users and customers of Box products and services interact with Box servers to perform file sync operations.

95.     On information and belief, Box is liable for infringement, literally and/or under the doctrine of equivalents, of one or more claims of the '787 Patent under 35 U.S.C. § 271(b) based on its active marketing and promotion of its Box products and services in the United States to its customers and prospective customers.  On information and belief Box has, and will continue to, intentionally encourage acts of direct infringement with knowledge of the '787 Patent and knowledge that its acts are encouraging infringement.

96.     On information and belief, Box is liable for infringement, literally and/or under the doctrine of equivalents, of one or more claims of the '787 Patent under 35 U.S.C. § 271(c), because Box has had, and continues to have, knowledge that its Box products are especially developed or adapted for a use that infringes the '787 Patent and constitute a material part of the claimed systems and methods.  Box has had, and continues to have, knowledge that there are no substantial non-infringing uses for these Products. Box has infringed and continues to infringe the '787 Patent directly and/or indirectly in violation of 35 U.S.C. § 271(c).

## DEFENDANT SAILPOINT

97.     SailPoint makes and sells valued added integration services and products for Box's online document storage and synchronization products and services, including those products and services that infringe Plaintiff's patents identified above, through Box's online platforms and mobile applications to customers, which practice each and every limitation of one or more claims of the '787 patent.

98.     More specifically, SailPoint's Identity Governance Platform provides identity governance solutions that are integrated with Box products and services, enabling users of Box products and services to, among other things, control user access, identify sensitive data, and monitor for malicious behavior.

# How does SailPoint integrate with Box?

SailPoint collects and analyzes the data and file permissions in Box to identify sensitive data and who has access to it. We can also alert you about inappropriate access to help you maintain security.

## Examples



Data discovery and classification ▶

Permission analysis ▶

Access monitoring and alerting ▶

# Do you have files in Box that could be a compliance risk?

SailPoint's integration with Box helps you identify sensitive information, manage data ownership and alert you to any suspicious access activity. As more people collaborate and share information in the cloud, protecting access to your Box files has never been more important.

- Find and address your compliance gaps
- Ensure consistent governance across all data types
- Be alerted if inappropriate access is detected
- Minimize exposure to data leakage



box

### Learn more

How identity governance helps ensure GDPR compliance ▶

Governing unstructured data and data access ▶

Watch our Box integration demo ▶



99.     On information and belief, SailPoint, in order to develop, support, and provide its identity governance solutions, has directly infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '787 Patent under 35 U.S.C. § 271(a) by using Box products and services in the United States and abroad without authority. Included in these acts of infringement are situations where devices associated with SailPoint interact with Box servers to perform file sync operations.

## DEFENDANT VISTRA

100.     Vistra uses Box's online document storage and synchronization products and services, including those products and services that infringe Plaintiff's patents identified above, through Box's online platforms and mobile applications to customers, which practice each and every limitation of one or more claims of the '787 patent.

101.     On its website, Box identifies Vistra as a user of Box's products and services.

**PROBLEM**

Vistra Energy is growing quickly through both organic means and acquisitions. Over an 18-month period, Vistra expanded from operating in Texas to 20 states, the District of Columbia, Japan, and Canada. Rapid growth makes for rapidly changing processes as a diverse workforce assembles across geographic locations.

**SOLUTION**

By migrating content to the cloud on a central platform with Box, Vistra can now leverage Box Keysafe to create consistent processes and better secure data — even at sensitive locations like nuclear facilities and during the acquisition planning phase of an M&A effort. Putting Box Governance in place is giving Vistra even more control over content.

**OUTCOME**

Box gives Vistra's workforce the user experience they expect and has saved the company money as it's retired expensive subscription-based tools. Processes across lines of business are now poised for automation, and all content is in compliance with FedRAMP and other regulations. Plus, cloud-based infrastructure means content processes scale as the company grows.

Technology has gradually been transitioning the entire workforce over to one central content platform with which a lot of the existing collaboration tools integrate well: Box.

"Box started as a grassroots effort by some of the folks on our political affairs team in order to share information with external consultants," Pelosi explains. "But as additional folks heard it was there, it became, 'Oh!, we could also use that for other teams.'"

The initial Box test case of about 250 people was so successful that, within a year, the number of users had bumped up to 1,000. Now, when Vistra acquires a new team, incoming employees are given "birthright access" to Box on day one. This practice is scaling up the number of Box users dramatically, and Box has become the de facto content layer of the company's digital work processes.

An early group that migrated to Box was a marketing team using an expensive file-sharing tool for digital asset management. The tool was robust, but it wasn't delivering a lot of value because the team simply didn't use most of its features. IT helped the team move their entire repository of graphical assets to the cloud into Box, saving the company a tremendous amount of money in subscription costs for an underutilized file-sharing tool.

The regulatory response organization within Vistra has to keep a close eye on governance and retention policies, and over time, their network shared drive space had run out. Accessing files on this drive was not easy, either, since users had to be onsite and connected to the network. IT migrated these assets to Box, using Box Governance to better manage content and stay in compliance.

https://www.box.com/customers/vistra-energy (last visited December 16, 2021)

102.    On information and belief, Vistra has directly infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '787 Patent under 35 U.S.C. § 271(a) by using Box products and services in the United States and abroad without authority.  Included in these acts of infringement are situations where devices associated with Vistra interact with Box servers to perform file sync operations.

## COUNT FIVE

## INFRINGEMENT OF U.S. PATENT NO. 10,754,823

103.    Plaintiff incorporates paragraphs 1 through 102 as though fully set forth herein.

104.    Plaintiff is the owner, by assignment of U.S. Patent No. 10,754,823 (the "'823 Patent"), entitled "Pre-file-transfer availability indication based on prioritized metadata" issued on August 25, 2020. A copy of the '823 Patent is attached as Exhibit 5.

105.    The '823 Patent is generally directed to systems and methods for sharing electronic files between multiple devices, wherein when a user modifies an electronic file on a device, metadata associated with the modified electronic file is automatically transferred to other devices with higher priority, which causes a graphical availability indication of the updated version of the modified electronic file to be presented on the other devices, and subsequently the copy of the modified electronic file is transferred to the other devices.

106.     Plaintiff is the owner by assignment of all rights, title, and interest in and to the '823 Patent, including the right to assert all causes of action arising under the '823 Patent and the right to all remedies for the infringement of the '823 Patent.

107.     For example, claim 1 of the '823 Patent states:

1.      A system comprising:

a server system comprising one or more processors programmed with computer program instructions that, when executed, cause the server system to:

receive, over a network, a copy of a first file from a first client device associated with a user, wherein the copy of the first file is automatically received from the first client device responsive to the user modifying a content of the first file stored on the first client device, the copy of the first file being an updated version of the first file that is generated from the user modifying the content of the first file;

receive, over a network, from the first client device, first metadata associated with the updated version of the first file that is generated from the user modifying the content of the first file, the first metadata being assigned a first priority greater than a second priority assigned to the copy of the first file;

automatically transfer, based on the first priority being greater than the second priority, the first metadata over a network to a second client device associated with the user such that the first metadata is transferred to the second client device before the copy of the first file is transferred to the second client device,

wherein, before the copy of the first file is transferred to the second client device:

(i) the transfer of the first metadata to the second client device causes a graphical availability indication of the updated version of the first file to be presented at the second client device based on the first metadata, and

(ii) the graphical availability indication is presented proximate a file icon representing the first file on a user interface of the second client device, and

wherein the graphical availability indication indicates that the updated version of the first file generated from the user modifying the content of the first file is available to be downloaded from the server system to the second client device; and

subsequent to the transfer of the first metadata to the second client device, transfer the copy of the first file to the second client device,

wherein at least one of the server system or the first client device comprises a priority assignment configuration to assign greater priority to metadata associated with files than priority assigned to the files such that at least one of the server system or the first client device assigns the first priority to the first metadata and the second priority to the copy of the first file based on the priority assignment configuration.

## **DEFENDANT BOX**

108.    In addition to the description in paragraphs 89-96, Box's server system comprises one or more processors running Box server software, and Box's file sharing software running on a first client device and a second client device configure the first client device and the second client device to sync with each other. When a user modifies a content of a first file stored on the first client device, Box's server system receives metadata, with higher priority, about the modified first file from the first client device, and automatically transfers the metadata to the

second client device before a copy of the modified first file, with lower priority, is transferred to the second client device.

109.    Based on the higher-priority metadata transferred from the Box server system to the second client device, a graphical availability indication of the updated version of the first file is presented proximate a file icon representing the first file on a Box user interface of the second client device, before the copy of the modified first file is transferred to the second client device. The graphical availability indication represents that the updated version of the first file is available to be downloaded from the Box server system to the second client device.

110.    Based on the metadata downloaded from Box's servers to the second client device, and prior to receiving the modified file, graphical availability indications are presented proximate to file icons on Box user interface of the second client device to indicate that the updated version is available for download.



The blue cloud icon beside a file or folder indicates the item is safely stored and up to date in Box. Add or update a file or folder in Box Drive, and the icon changes to an orange syncing icon. The icon also displays as syncing when Box Drive is uploading changes you made to files offline. When the sync completes the icon resets to the blue cloud.



https://support.box.com/hc/en-us/articles/360043697494-Using-Box-Drive-Basics (last visited December 16, 2021)

111.    Subsequent to the metadata transfer, and in response to a page refresh, Box's server system transfers the modified file to the linked device. In response to the Box page being refreshed and the updated version being downloaded, Box's server system displays the version number of the modified file indicating the updated version. Box overwrites the old version with the new version.

112.    On information and belief, Box has directly infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '823 Patent under 35 U.S.C. § 271(a) by developing, manufacturing, distributing, operating, using, selling, and/or offering to sell Box products and services in the United States without authority.  Included in these acts of infringement are situations where devices owned by users and customers of Box products and services interact with Box servers to perform file sync operations.

113.    On information and belief, Box is liable for infringement, literally and/or under the doctrine of equivalents, of one or more claims of the '823 Patent under 35 U.S.C. § 271(b) based on its active marketing and promotion of its Box products and services in the United States to its customers and prospective customers.  On information and belief Box has, and will continue to, intentionally encourage acts of direct infringement with knowledge of the '823 Patent and knowledge that its acts are encouraging infringement.

114.     On information and belief, Box is liable for infringement, literally and/or under the doctrine of equivalents, of one or more claims of the '823 Patent under 35 U.S.C. § 271(c), because Box has had, and continues to have, knowledge that its Box products are especially developed or adapted for a use that infringes the '823 Patent and constitute a material part of the claimed systems and methods.  Box has had, and continues to have, knowledge that there are no substantial non-infringing uses for these Products. Box has infringed and continues to infringe the '823 Patent directly and/or indirectly in violation of 35 U.S.C. § 271.

## DEFENDANT SAILPOINT

115.     SailPoint makes and sells valued added integration services and products for Box's online document storage and synchronization products and services, including those products and services that infringe Plaintiff's patents identified above, through Box's online platforms and mobile applications to customers, which practice each and every limitation of one or more claims of the '823 patent.

116.     More specifically, SailPoint's Identity Governance Platform provides identity governance solutions that are integrated with Box products and services, enabling users of Box products and services to, among other things, control user access, identify sensitive data, and monitor for malicious behavior.

## How does SailPoint integrate with Box?

SailPoint collects and analyzes the data and file permissions in Box to identify sensitive data and who has access to it. We can also alert you about inappropriate access to help you maintain security.

### Examples



Data discovery and classification ▶

Permission analysis ▶

Access monitoring and alerting ▶

## Do you have files in Box that could be a compliance risk?

SailPoint's integration with Box helps you identify sensitive information, manage data ownership and alert you to any suspicious access activity. As more people collaborate and share information in the cloud, protecting access to your Box files has never been more important.

- Find and address your compliance gaps
- Ensure consistent governance across all data types
- Be alerted if inappropriate access is detected
- Minimize exposure to data leakage



### Learn more

How identity governance helps ensure GDPR compliance ▶

Governing unstructured data and data access ▶

Watch our Box integration demo ▶



Identify where sensitive data resides in Box

Classify and analyze data based on content and behavior

https://www.sailpoint.com/integrations/box/ (last visited December 16, 2021)

117.     On information and belief, SailPoint, in order to develop, support, and provide its identity governance solutions, has directly infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '823 Patent under 35 U.S.C. § 271(a) by using Box products and services in the United States and abroad without authority. Included in these acts of infringement are situations where devices associated with SailPoint interact with Box servers to perform file sync operations.

## DEFENDANT VISTRA

118.     Vistra uses Box's online document storage and synchronization products and services, including those products and services that infringe Plaintiff's patents identified above, through Box's online platforms and mobile applications to customers, which practice each and every limitation of one or more claims of the '823 patent.

119.     On its website, Box identifies Vistra as a user of Box's products and services.

**PROBLEM**

Vistra Energy is growing quickly through both organic means and acquisitions. Over an 18-month period, Vistra expanded from operating in Texas to 20 states, the District of Columbia, Japan, and Canada. Rapid growth makes for rapidly changing processes as a diverse workforce assembles across geographic locations.

**SOLUTION**

By migrating content to the cloud on a central platform with Box, Vistra can now leverage Box Keysafe to create consistent processes and better secure data — even at sensitive locations like nuclear facilities and during the acquisition planning phase of an M&A effort. Putting Box Governance in place is giving Vistra even more control over content.

**OUTCOME**

Box gives Vistra's workforce the user experience they expect and has saved the company money as it's retired expensive subscription-based tools. Processes across lines of business are now poised for automation, and all content is in compliance with FedRAMP and other regulations. Plus, cloud-based infrastructure means content processes scale as the company grows.

Technology has gradually been transitioning the entire workforce over to one central content platform with which a lot of the existing collaboration tools integrate well: Box.

"Box started as a grassroots effort by some of the folks on our political affairs team in order to share information with external consultants," Pelosi explains. "But as additional folks heard it was there, it became, 'Oh!, we could also use that for other teams.'"

The initial Box test case of about 250 people was so successful that, within a year, the number of users had bumped up to 1,000. Now, when Vistra acquires a new team, incoming employees are given "birthright access" to Box on day one. This practice is scaling up the number of Box users dramatically, and Box has become the de facto content layer of the company's digital work processes.

An early group that migrated to Box was a marketing team using an expensive file-sharing tool for digital asset management. The tool was robust, but it wasn't delivering a lot of value because the team simply didn't use most of its features. IT helped the team move their entire repository of graphical assets to the cloud into Box, saving the company a tremendous amount of money in subscription costs for an underutilized file-sharing tool.

The regulatory response organization within Vistra has to keep a close eye on governance and retention policies, and over time, their network shared drive space had run out. Accessing files on this drive was not easy, either, since users had to be onsite and connected to the network. IT migrated these assets to Box, using Box Governance to better manage content and stay in compliance.

https://www.box.com/customers/vistra-energy (last visited December 16, 2021)

120.    On information and belief, Vistra has directly infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '823 Patent under 35 U.S.C. § 271(a) by using Box products and services in the United States and abroad without authority.  Included in these acts of infringement are situations where devices associated with Vistra interact with Box servers to perform file sync operations.

## COUNT SIX

## INFRINGEMENT OF U.S. PATENT NO. 11,003,622

121.    Plaintiff incorporates paragraphs 1 through 120 as though fully set forth herein.

122.    Plaintiff is the owner, by assignment of U.S. Patent No. 11,003,622 (the "'622 Patent"), entitled "Architecture For Management of Digital Files Across Distributed Network" issued on May 11, 2021. A copy of the '622 Patent is attached as Exhibit 6.

123.    The '622 Patent is generally directed to systems and methods for sharing electronic files between multiple devices, wherein when a user modifies an electronic file on a device, metadata associated with the modified electronic file is first automatically transferred to other devices with higher priority and a copy of the modified file is automatically transferred to the other devices to replace an older version of the electronic file stored on the other devices.

124.     Plaintiff is the owner by assignment of all rights, title, and interest in and to the '622 Patent, including the right to assert all causes of action arising under the '622 Patent and the right to all remedies for the infringement of the '622 Patent.

125.     For example, claim 1 of the '622 Patent states:

1.     A system comprising:

a server system comprising one or more processors programmed with computer program instructions that, when executed, cause the server system to:

receive, over a network, a copy of a first file from a first client device associated with a user, wherein the copy of the first file is automatically received from the first client device responsive to the user modifying a content of the first file stored on the first client device, the copy of the first file being a version of the first file that is generated from the user modifying the content of the first file;

store the copy of the first file on the server system;

receive, from the first client device, first metadata associated with the version of the first file that is generated from the user modifying the content of the first file, the first metadata being assigned a first priority greater than a second priority assigned to the copy of the first file;

automatically transfer, based on the first priority being greater than the second priority, the first metadata to the second client device such that the first metadata is transferred to the second client device prior to the copy of the first file being transferred to the second client device; and

automatically transfer, over a network, the copy of the first file to the second client device associated with the user to replace an older version of the first file

stored on the second client device, responsive to receiving the copy of the first file from the first client device.

**DEFENDANT BOX**

126.    In addition to the description in paragraphs 108-114, Box's server system comprises one or more processors running Box server software, and Box's file sharing software running on a first client device and a second client device configure the first client device and the second client device to sync with each other. When a user modifies a content of a first file stored on the first client device, Box's server system receives metadata, with higher priority, about the modified first file from the first client device, and automatically transfers the metadata to the second client device before a copy of the modified first file, with lower priority, is transferred to the second client device. Subsequently, Box's server system automatically transfers the copy of the modified first file to the second client device to replace an older version of the first file stored on the second client device.

127.    When the modified file is uploaded to Box's server system, Box user interface prompts the second client device to receive the updated version of the modified file.

128.    Once the updated version is received at the second client device, the updated version overwrites the older version of the file previously stored on the second client device. Box's server system keeps track of file versions of the file:

---

Box overwrites a file and and updates the version each time you:

- edit the file using an online editor, such as Box Edit, Microsoft Office Online, or the Google editing suite)
- edit the file within your Box Sync or Box Drive folder
- use the **Upload New Version** button on the Web app
- upload a file into a folder that has an existing file with the **exact** same name in it on the Box Web app.

---

https://support.box.com/hc/en-us/articles/360043697054-Accessing-Version-History (last visited December 16, 2021)



https://support.box.com/hc/en-us/articles/360043697054-Accessing-Version-History (last visited December 16, 2021)

129.    On information and belief, Box has directly infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '622 Patent under 35 U.S.C. § 271(a) by developing, manufacturing, distributing, operating, using, selling, and/or offering to sell Box products and services in the United States without authority.  Included in these acts of infringement are situations where devices owned by users and customers of Box products and services interact with Box servers to perform file sync operations.

130.    On information and belief, Box is liable for infringement, literally and/or under the doctrine of equivalents, of one or more claims of the '622 Patent under 35 U.S.C. § 271(b)

based on its active marketing and promotion of its Box products and services in the United States to its customers and prospective customers. On information and belief Box has, and will continue to, intentionally encourage acts of direct infringement with knowledge of the '622 Patent and knowledge that its acts are encouraging infringement.

131. On information and belief, Box is liable for infringement, literally and/or under the doctrine of equivalents, of one or more claims of the '622 Patent under 35 U.S.C. § 271(c), because Box has had, and continues to have, knowledge that its Box products are especially developed or adapted for a use that infringes the '622 Patent and constitute a material part of the claimed systems and methods. Box has had, and continues to have, knowledge that there are no substantial non-infringing uses for these Products. Box has infringed and continues to infringe the '622 Patent directly and/or indirectly in violation of 35 U.S.C. § 271.

## DEFENDANT SAILPOINT

132. SailPoint makes and sells valued added integration services and products for Box's online document storage and synchronization products and services, including those products and services that infringe Plaintiff's patents identified above, through Box's online platforms and mobile applications to customers, which practice each and every limitation of one or more claims of the '622 patent.

133. More specifically, SailPoint's Identity Governance Platform provides identity governance solutions that are integrated with Box products and services, enabling users of Box products and services to, among other things, control user access, identify sensitive data, and monitor for malicious behavior.

# How does SailPoint integrate with Box?

SailPoint collects and analyzes the data and file permissions in Box to identify sensitive data and who has access to it. We can also alert you about inappropriate access to help you maintain security.



Examples

Data discovery and classification ▶

Permission analysis ▶

Access monitoring and alerting ▶

# Do you have files in Box that could be a compliance risk?

SailPoint's integration with Box helps you identify sensitive information, manage data ownership and alert you to any suspicious access activity. As more people collaborate and share information in the cloud, protecting access to your Box files has never been more important.

- Find and address your compliance gaps
- Ensure consistent governance across all data types
- Be alerted if inappropriate access is detected
- Minimize exposure to data leakage



Learn more

How identity governance helps ensure GDPR compliance ▶

Governing unstructured data and data access ▶

Watch our Box integration demo ▶



https://www.sailpoint.com/integrations/box/ (last visited December 16, 2021)

134.     On information and belief, SailPoint, in order to develop, support, and provide its identity governance solutions, has directly infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '622 Patent under 35 U.S.C. § 271(a) by using Box products and services in the United States and abroad without authority. Included in these acts of infringement are situations where devices associated with SailPoint interact with Box servers to perform file sync operations.

## DEFENDANT VISTRA

135.     Vistra uses Box's online document storage and synchronization products and services, including those products and services that infringe Plaintiff's patents identified above, through Box's online platforms and mobile applications to customers, which practice each and every limitation of one or more claims of the '622 patent.

136.     On its website, Box identifies Vistra as a user of Box's products and services.

**PROBLEM**

Vistra Energy is growing quickly through both organic means and acquisitions. Over an 18-month period, Vistra expanded from operating in Texas to 20 states, the District of Columbia, Japan, and Canada. Rapid growth makes for rapidly changing processes as a diverse workforce assembles across geographic locations.

**SOLUTION**

By migrating content to the cloud on a central platform with Box, Vistra can now leverage Box Keysafe to create consistent processes and better secure data — even at sensitive locations like nuclear facilities and during the acquisition planning phase of an M&A effort. Putting Box Governance in place is giving Vistra even more control over content.

**OUTCOME**

Box gives Vistra's workforce the user experience they expect and has saved the company money as it's retired expensive subscription-based tools. Processes across lines of business are now poised for automation, and all content is in compliance with FedRAMP and other regulations. Plus, cloud-based infrastructure means content processes scale as the company grows.

Technology has gradually been transitioning the entire workforce over to one central content platform with which a lot of the existing collaboration tools integrate well: Box.

"Box started as a grassroots effort by some of the folks on our political affairs team in order to share information with external consultants," Pelosi explains. "But as additional folks heard it was there, it became, 'Oh!, we could also use that for other teams.'"

The initial Box test case of about 250 people was so successful that, within a year, the number of users had bumped up to 1,000. Now, when Vistra acquires a new team, incoming employees are given "birthright access" to Box on day one. This practice is scaling up the number of Box users dramatically, and Box has become the de facto content layer of the company's digital work processes.

> An early group that migrated to Box was a marketing team using an expensive file-sharing tool for digital asset management. The tool was robust, but it wasn't delivering a lot of value because the team simply didn't use most of its features. IT helped the team move their entire repository of graphical assets to the cloud into Box, saving the company a tremendous amount of money in subscription costs for an underutilized file-sharing tool.
>
> The regulatory response organization within Vistra has to keep a close eye on governance and retention policies, and over time, their network shared drive space had run out. Accessing files on this drive was not easy, either, since users had to be onsite and connected to the network. IT migrated these assets to Box, using Box Governance to better manage content and stay in compliance.

https://www.box.com/customers/vistra-energy (last visited December 16, 2021)

137. On information and belief, Vistra has directly infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '622 Patent under 35 U.S.C. § 271(a) by using Box products and services in the United States and abroad without authority. Included in these acts of infringement are situations where devices associated with Vistra interact with Box servers to perform file sync operations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter judgement against the Defendants:

a. Declaring that the Defendants have infringed the '561, '942, '607, '787, '823, and '622 Patents;

b. Awarding Plaintiff its damages suffered as a result of the Defendants' infringement of the '561, '942, '607, '787, '823, and '622 Patents, including pre-judgement and post-judgement interest and supplemental damages for any continuing post-verdict or post-judgement infringement with an accounting as needed;

c. An order enjoining Defendants, their officers, agents, employees, attorneys, and all other persons or entities acting in concert, participation or in privity with one or more

of them, and their successors and assigns, from infringing

the '561, '942, '607, '787, '823, and '622 Patents;

d.  A judgment declaring that this is an exceptional case and awarding Plaintiff's

reasonable attorneys' fees and costs in this action, as provided by 35 U.S.C. § 285;

e.  A judgment, declaration or order that Defendant's infringement is willful and

increasing damages under 35 U.S.C. § 284;

f.  Awarding Plaintiff its costs, attorney's fees, expenses, and interest; and

g.  Granting Plaintiff such further relief which may be requested and as the Court find

appropriate.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable in this Complaint.

Dated:  December 29, 2021

OF COUNSEL:

Raja N. Saliba
Michael R. Dzwonczyk
Chidambaram S. Iyer
Mark Boland

SUGHRUE MION, PLLC
2000 Pennsylvania Ave., NW
Washington, DC 20037
(202) 293-7060
mboland@sughrue.com
rsaliba@sughrue.com
mdzwonczyk@sughrue.com
ciyer@sughrue.com

Respectfully submitted,

*/s/ Raymond W. Mort, III*
Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com

THE MORT LAW FIRM, PLLC
100 Congress Ave, Suite 2200
Austin, Texas 78701
Tel/Fax: (512) 865-7950

ATTORNEYS FOR PLAINTIFF
TOPIA TECHNOLOGY, INC.