**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| TOPIA TECHNOLOGY, INC., <br><br> Plaintiff, <br><br> v. <br><br> BOX, INC., SAILPOINT TECHNOLOGIES HOLDINGS, INC., and VISTRA CORP., <br><br> Defendants. | Case No. 6:21-cv-1372-ADA <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANTS SAILPOINT AND VISTRA'S OPPOSED MOTION TO
SEVER AND STAY UNDER THE "CUSTOMER-SUIT" DOCTRINE**

# **TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................................1

II. BACKGROUND ............................................................................................................2

III. ARGUMENT..................................................................................................................3

   A. The Court Should Sever and Stay the Claims Against the Customer Defendants Under the Customer-Suit Exception Factors ................................................................................4

      1. The Customer Defendants Are Mere Downstream Entities While Box Is the True Defendant in This Dispute ........................................................................................5

      2. The Customer Defendants Agree to Be Bound by the Outcome of the Box Claims...7

      3. Box Is the Only Source of the Accused Software.......................................................7

      4. Severing and Staying the Claims Against the Customer Defendants Will Serve the Principles of Efficiency and Comity............................................................................8

   B. The General Stay Factors Weigh in Favor of Severing and Staying the Claims Against the Customer Defendants...................................................................................................9

      1. A Stay Will Not Unduly Prejudice Topia or Present a Clear Tactical Disadvantage..9

      2. A Stay Will Simplify the Issues in Question Because the Box Claims Will Resolve the Liability Allegations Against the Customer Defendants .....................................10

      3. This Case Is in Its Earliest Stages..............................................................................10

IV. CONCLUSION..............................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Red River Waterway Comm'n*,
   231 F.3d 211 (5th Cir. 2000) .................................................................................................. 3

*Collaborative Agreements, LLC v. Adobe Sys. Inc.*,
   No. 1-14-CV-356-LY, 2015 WL 10818739 (W.D. Tex. Aug. 21, 2015) .............................. 4, 7

*Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*,
   No. A-13-CA-1025-SS, 2015 WL 3773014 (W.D. Tex. June 16, 2015) ................................. 9

*CyWee Grp. Ltd. v. Huawei Device Co. Ltd.*,
   No. 2:17-CV-495-WCB, 2018 WL 4002776 (E.D. Tex. Aug. 22, 2018) ................................. 7

*Glenayre Elecs., Inc. v. Jackson*,
   443 F.3d 851 (Fed. Cir. 2006) ................................................................................................. 6

*Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*,
   No. 2:16-cv-00618-RWS-RSP, 2017 WL 365398 (E.D. Tex. Jan. 25, 2017) ....................... 5, 7

*Google Inc.*,
   588 F. App'x 988 (Fed. Cir. 2014) ....................................................................................... 4, 8

*Kahn v. Gen. Motors Corp.*,
   889 F.2d 1078 (Fed. Cir. 1989) ............................................................................................... 6

*Katz v. Lear Siegler, Inc.*,
   909 F.2d 1459 (Fed. Cir. 1990) ............................................................................................ 4, 6

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
   342 U.S. 180 (1952) ................................................................................................................. 6

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ................................................................................................................. 3

*Nintendo of Am., Inc.*,
   756 F.3d 1363 (Fed. Cir. 2014) ........................................................................................ 4, 5, 8

*Shifferaw v. Emson USA*,
   No. 2:09-CV-54-TJW-CE, 2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) ............................. 5

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
   657 F.3d 1349 (Fed. Cir. 2011) ..................................................................................... 4, 5, 6, 8

*SZ DJI Tech. Co. v. Autel Robotics USA LLC*,
   No. 16-706-LPS, 2019 WL 1244948 (D. Del. Mar. 18, 2019) ................................................ 9

*Toshiba Corp. v. Hynix Semiconductor, Inc.*,
    No. Civ.A.3:04-CV-2391-L, 2005 WL 2415960 (N.D. Tex. Sept. 30, 2005) ............................ 5

*United States v. Colomb*,
    419 F.3d 292 (5th Cir. 2005) ................................................................................................ 8

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
    759 F.3d 1307 (Fed. Cir. 2014) ............................................................................................ 9

*W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*,
    751 F.2d 721 (5th Cir. 1997) ................................................................................................ 8

*Wolf Designs, Inc. v. Donald McEvoy Ltd.*,
    341 F. Supp. 2d 639 (N.D. Tex. 2004) ................................................................................. 9

**Statutes**

35 U.S.C. § 299(a)(1) ................................................................................................................. 1

**Rules & Regulations**

FED. R. CIV. P. 20(a)(2) ............................................................................................................... 1

I.   **INTRODUCTION**

Defendants SailPoint Technologies Holdings, Inc. ("SailPoint") and Vistra Corp. ("Vistra") (collectively, "Customer Defendants") respectfully move the Court to sever Plaintiff Topia Technology, Inc.'s ("Topia") claims against SailPoint and Vistra, and to stay those claims pending resolution of Topia's claims against the supplier of the accused functionality and the 'true defendant' in this case—Box, Inc. ("Box").

The Customer Defendants did not develop and do not supply the software that forms the basis for Topia's infringement allegations. Rather, SailPoint provides identity governance software which allegedly *integrates with Box's accused software*, so that enterprise customers which use Box's software can control which of their employees have access to the enterprise's Box account. However, SailPoint's software and services are not accused of infringement. Likewise, Vistra is alleged to use Box's accused software as part of its business. Indeed, Topia's claim charts accompanying its infringement contentions served April 28, 2022 include *no mapping of the claims, whatsoever, to any software or service developed or provided by SailPoint or Vistra.* Only Box's software is charted. Topia alleges that the Customer Defendants infringe solely through their *use* of Box's software. Box is the true defendant in this dispute, and the claims against Box will resolve Topia's infringement allegations in this case against SailPoint and Vistra.[1]

It would be an enormous waste of resources to litigate Topia's claims against the Customer Defendants now over the exact same infringement allegations that Topia has chosen to bring

---

[1] Should Topia contend there may be relevant distinctions in the way the Customer Defendants' software operates with respect to the way Box's software operates, such that an application of the customer-suit doctrine would somehow be improper here, Topia's contention would effectively concede that the Customer Defendants have been *misjoined* with Box in this action. *See* 35 U.S.C. § 299(a)(1) (allowing joinder in a patent case only if the alleged right to relief "aris[es] out of *the same* transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of *the same accused product or process*," and noting that defendants may *not* be joined "based solely on allegations that they each have infringed the patent or patents in suit" (emphasis added)); *see also* FED. R. CIV. P. 20(a)(2).

against the supplier of the accused functionality. To conserve resources, the Court has the power to sever and stay Topia's claims against the Customer Defendants under the customer-suit doctrine and its inherent power to promote efficiency and judicial economy. The Federal Circuit has repeatedly held that claims against manufacturers or suppliers, like Box, should take precedence over claims against a 'downstream' entity like SailPoint and Vistra. Moreover, to facilitate a stay and avoid any prejudice to Topia, the Customer Defendants are prepared to stipulate to be bound in this case by the final outcome of the claims against Box. This stipulation will ensure that final resolution of Topia's claims against Box will resolve the infringement and invalidity issues as to the Customer Defendants. SailPoint and Vistra accordingly request that the Court sever and stay Topia's claims against SailPoint and Vistra pending final resolution of Topia's claims against Box.

## II.   BACKGROUND

SailPoint provides identity governance software for managing and controlling which of an enterprise's employees have access to the enterprise's Box account. Topia alleges that SailPoint infringes six patents solely through its *use* of Box's software. *E.g.*, Dkt. No. 8 ¶¶ 13, 45. Specifically, Topia has alleged that "SailPoint is in the business of ***using*** Box products and services and providing valued added integration services and products for Box's online document storage and synchronization products and services, including those products and services that infringe Plaintiff's patents …, through Box's online platforms and mobile applications to customers." Dkt. No. 8 ¶ 13 (emphasis added); *see also id.* ¶ 45. Consistent with its amended complaint, Topia's infringement contentions served April 28, 2022 map the asserted claims ***exclusively*** to Box's software and contain no mapping whatsoever to any activity that might be unique to SailPoint's use of Box's software. *See* Exs. 1–2.[2] Put simply, SailPoint is a defendant in this case solely

---

[2] All exhibits are attached to the Declaration of Andrew N. Saul, filed herewith. To avoid burdening the Court with excessively voluminous exhibits, the claim chart for the first of Topia's

2

because it allegedly *uses* accused third-party software, developed and offered by the true defendant in this case—Box.

Topia has lodged nearly identical allegations against Vistra. Topia alleges that Vistra is a Box customer and "*uses* Box's online document storage and synchronization products and services, including those products and services that infringe Plaintiff's patents …, through Box's online platform and mobile applications." Dkt. No. 8 ¶ 16 (emphasis added); *see also id.* ¶¶ 46-48. As with SailPoint, Topia's April 28th infringement contentions map the asserted claims *only* to Box's software and fail to provide any indication of activity that might be unique to Vistra's use of Box's software. *See* Exs. 1–2.³ Topia's allegations against Vistra are likewise based on Vistra's use of third-party software, developed and offered by Box, the true defendant.

### III.   ARGUMENT

The Court should sever and stay Topia's claims against the Customer Defendants under the customer-suit exception and the general stay factors favoring judicial efficiency. A trial court has broad discretion to stay an action against a party to promote judicial economy. *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Where suit is brought against both a supplier, like Box, and a downstream company, e.g., SailPoint and Vistra, the claims against the downstream company should be stayed pending resolution of those against the supplier to promote judicial economy. *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365-66 (Fed. Cir. 2014). This is

---

asserted patents is provided as an exemplar of Topia's complete set of charts. All charts, like the chart provided, map the asserted claims *exclusively* to Box's software and contain no mapping whatsoever to any activity that might be unique to SailPoint's or Vistra's use of Box's software.

³ *See* n.2.

3

particularly true when, as here, resolution of the claims against the supplier would inherently resolve the claims against the downstream company. *Id.* at 1365; *see also Collaborative Agreements, LLC v. Adobe Sys. Inc.*, No. 1-14-CV-356-LY, 2015 WL 10818739, at *2 (W.D. Tex. Aug. 21, 2015).

> A. **The Court Should Sever and Stay the Claims Against the Customer Defendants Under the Customer-Suit Exception Factors.**

The customer-suit exception provides that "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). This rule "exists to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *Nintendo*, 756 F.3d at 1365 (citation omitted). "[C]ourts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). The Federal Circuit has held that these principles govern in cases like this, where the supplier and customer were included as defendants in the same case. *Nintendo*, 756 F.3d at 1365.

To warrant a stay of the customer suit, the case involving the supplier "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue." *Spread Spectrum*, 657 F.3d at 1358 (citing *Katz*, 909 F.2d at 1464). Courts are instructed to use a "flexible approach" to avoid wasteful expenditure of resources, and therefore "stay[] proceedings if the other suit [here, the claim] is so closely related that substantial savings of litigation resources can be expected." *In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014); *see also Nintendo*, 756 F.3d at 1365-66 (finding the customer-suit exception is "designed to facilitate just, convenient, efficient, and less expensive determination" (citations omitted)).

Courts consider three factors to evaluate a stay: (1) "whether the consumers in the first-

filed action are mere resellers of products manufactured by the party in the second-filed action"; (2) "whether the consumers in the first-filed action have agreed to be bound by any decision in the second-filed action"; and (3) "whether the manufacturers in the second-filed action are the only source of the allegedly infringing activity or product." *Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*, No. 2:16-cv-00618-RWS-RSP, 2017 WL 365398, at *5 n.3 (E.D. Tex. Jan. 25, 2017) (citation omitted). The "guiding principles in the customer suit exception cases are efficiency and judicial economy." *Spread Spectrum*, 657 F.3d at 1357 (citation omitted).

### 1. The Customer Defendants Are Mere Downstream Entities While Box Is the True Defendant in This Dispute.

The allegations against SailPoint and Vistra are the same as those against the supplier Box and staying the action against SailPoint and Vistra is warranted. *Nintendo*, 756 F.3d at 1366 ("Since Nintendo's liability is predicate to recovery from any of the defendants, the case against Nintendo must proceed first, in any forum."). "Where a single manufacturer is the only entity in the U.S. who makes and sells the only accused product to retailers, a patent infringement claim against a retailer is peripheral to the claims against the manufacturer." *Shifferaw v. Emson USA*, No. 2:09-CV-54-TJW-CE, 2010 WL 1064380, at *3 (E.D. Tex. Mar. 18, 2010); *see also Toshiba Corp. v. Hynix Semiconductor, Inc.*, No. Civ.A.3:04-CV-2391-L, 2005 WL 2415960, at *5 (N.D. Tex. Sept. 30, 2005) ("[T]he courts have recognized that '[a] patent infringement claim against a distributor is peripheral to a claim against the manufacturer.'" (second alteration in original) (citation omitted)).

With respect to Box and the Customer Defendants, Topia accuses the ***exact same*** Box software functionality. Indeed, Topia served a ***single set*** of infringement claim charts for ***all*** defendants in this case, and those claim charts map the asserted claims ***exclusively*** to Box's software. Accordingly, the claims against the Customer Defendants involve the same "major issues" of liability and damages as the claim filed against Box and are entirely duplicative.

Resolution of the claims against Box will resolve the claims against the Customer Defendants. If Box is found not liable for infringing the asserted patents (or if the patents are found invalid), that would be dispositive of Topia's claims against SailPoint and Vistra. *See, e.g., Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 185-86 (1952) (judgment in favor of a manufacturer accused of infringing patent bars suits against customers). Alternatively, if Topia obtains judgment in its favor against Box, it will have exhausted its rights as a patent holder and will be precluded from collecting damages with respect to the same infringing software from downstream entities like SailPoint and Vistra. *See, e.g., Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006) (precluding plaintiff from seeking damages from customers because damages already collected from manufacturer). Even if some minor issues were to remain after judgment as to the Box claims, resolution of the infringement claims will significantly simplify the claims against the Customer Defendants. *See Katz*, 909 F.2d at 1464 ("Although there may be additional issues involving the defendants in [the customer action], their prosecution will be advanced if [plaintiff] is successful on the major premises being litigated in [the manufacturer action], and may well be mooted if he is unsuccessful."). Moreover, as the developer and supplier of the accused software, Box plainly has a "greater interest in defending its actions against charges of patent infringement." *Spread Spectrum*, 657 F.3d at 1357 (citation omitted). In contrast, the Customer Defendants play no role whatsoever in developing or offering the accused Box software, but merely use it, out of the box, without modification. *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1082 (Fed. Cir. 1989) (collecting cases holding that a stay is appropriate where the customer is a mere reseller).

In sum, Box, not the Customer Defendants, is the true defendant to Topia's patent infringement claims.[4] Thus, upon resolution of the claims against the supplier—with a finding of liability and an award of damages, a settlement resulting in a license, or a finding of non-infringement or invalidity of the asserted claims—no additional issues would remain to be resolved as to the Customer Defendants. Simply put, there is no reason to litigate the claims against SailPoint and Vistra while the claims against Box move forward, and the Court should sever and stay the claims against the Customer Defendants pending final resolution of the claims against Box.

      **2.**      **The Customer Defendants Agree to Be Bound by the Outcome of the Box Claims.**

SailPoint and Vistra agree to be bound by the outcome of Topia's claims against Box, which would leave no patent issues unaddressed with respect to the Customer Defendants. This factor, thus, favors the application of the customer-suit exception. *Glob. Equity*, 2017 WL 365398, at *5 n.3; *see CyWee Grp. Ltd. v. Huawei Device Co. Ltd.*, No. 2:17-CV-495-WCB, 2018 WL 4002776, at *4 (E.D. Tex. Aug. 22, 2018) (holding that an agreement to be bound by the infringement determination in the manufacturer case supports a stay).

      **3.**      **Box Is the Only Source of the Accused Software.**

Topia's infringement claims are directed squarely against Box's software. Topia alleges the Customer Defendants infringe only through their *use* of that software. Here, it is undisputed that Box is the only source of the accused software. This factor, thus, favors a stay. *Glob. Equity*, 2017 WL 365398, at *5 n.3.

---

[4] Even though this case is not the typical customer-suit exception case given that Box, SailPoint, and Vistra were included as defendants in the same case, "'the same general principles govern' and . . . [Box] is the 'true defendant' in this case." *Collaborative*, 2015 WL 10818739, at *3 (citation omitted).

7

### 4. Severing and Staying the Claims Against the Customer Defendants Will Serve the Principles of Efficiency and Comity.

"[T]he guiding principles in the customer suit exception cases are efficiency and judicial economy." *Spread Spectrum*, 657 F.3d at 1357 (citation omitted). Because the theories of infringement with respect to Box and with respect to the Customer Defendants are identical, a severance and stay of the claims against the Customer Defendants until the Box claims are resolved will avoid duplicative discovery and briefing—resulting in "substantial savings of litigation resources" for the parties and the Court. *See In re Google*, 588 F. App'x at 991. A severance and stay will properly place the burden of this litigation on the supplier of the accused software, rather than SailPoint and Vistra, mere downstream entities lacking critical design and development information needed to defend this case. *See Nintendo*, 756 F.3d at 1365.

Stays in circumstances like this are warranted to avoid the virtual certainty of overlapping, wasteful, and duplicative proceedings. *United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005) ("A district court has inherent power to 'control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" (citation omitted)). The Fifth Circuit has instructed that "the general principle [of comity] is to avoid duplicative litigation"—and more specifically, "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) (citation omitted).

Topia accuses the same Box software with respect to Box and both the Customer Defendants. Continued litigation of this matter with respect to the Customer Defendants would be exceptionally wasteful because the Customer Defendants did not develop the accused software and do not possess the requisite intimate knowledge concerning its operation. A stay here would avoid this inevitable waste of resources to resolve duplicative claims. *Wolf Designs, Inc. v. Donald*

*McEvoy Ltd.*, 341 F. Supp. 2d 639, 645 (N.D. Tex. 2004) (holding that stay is needed "to prevent an extravagantly wasteful and useless duplication of the time and effort of the federal courts by the simultaneous trial of two complex and elaborate cases involving substantially the same factual issues"). The issues are better litigated in the first instance by Box.

> **B.     The General Stay Factors Weigh in Favor of Severing and Staying the Claims Against the Customer Defendants.**

The general stay factors also demonstrate that a severance and stay is in the interest of efficiency, judicial economy, and the just, speedy, and inexpensive resolution of this action. In deciding whether to stay a patent case, courts typically consider: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*, No. A-13-CA-1025-SS, 2015 WL 3773014, at *2 (W.D. Tex. June 16, 2015) (citation omitted). Here, all three factors weigh in favor of a stay.

> **1.     A Stay Will Not Unduly Prejudice Topia or Present a Clear Tactical Disadvantage.**

As stated, the Customer Defendants agree to be bound by the final outcome of Topia's claims against Box. Box developed and supplies the accused software and controls all relevant technical information. The Customer Defendants have little knowledge of these details. Further, Topia will not be disadvantaged with regard to any potential recovery as any injunction on the accused Box software would be equally effective against the Customer Defendants' use of that software, and any potential monetary relief will be available after the stay. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014); *SZ DJI Tech. Co. v. Autel Robotics USA LLC*, No. 16-706-LPS, 2019 WL 1244948, at *2 (D. Del. Mar. 18, 2019) ("Staying this litigation will not unduly prejudice [plaintiff], which may still recover monetary damages if (and when) infringement is found.").

9

      **2.**      **A Stay Will Simplify the Issues in Question Because the Box Claims Will Resolve the Liability Allegations Against the Customer Defendants.**

The Customer Defendants' agreement to be bound by the infringement and invalidity outcomes of the manufacturer cases would also reduce the burden on all parties and the Court. Additionally, the burden on the Court's limited resources is reduced by eliminating unnecessary hearings and a liability trial for the Customer Defendants. Accordingly, this factor favors a stay.

      **3.**      **This Case Is in Its Earliest Stages.**

This case is in its earliest stages. The Court entered the Scheduling Order just over two months ago. Discovery will not open until nearly three and a half months from now, on November 4, 2022, and the final pre-trial conference will not be held until around sixteen and a half months from now, on December 7, 2023. Hence, this final factor also weighs in favor of a stay.

**IV.    CONCLUSION**

For the foregoing reasons, the Court should sever Topia's claims against SailPoint and Vistra and stay those claims pending final resolution of Topia's claims against Box.

DATED:	July 25, 2022.	Respectfully submitted,

By:	/s/ Steve R. Borgman
Steve R. Borgman
Texas State Bar No. 02670300
KILPATRICK TOWNSEND & STOCKTON LLP
700 Louisiana Street, Suite 4300
Houston, Texas 77002
Telephone: (281) 809-4081
Facsimile: (281) 990-6826
Email:   sborgman@kilpatricktownsend.com

Edward ("Ted") J. Mayle (*pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON LLP
1400 Wewatta Street, Suite 600
Denver, Colorado 80202
Telephone: (303) 607-3368
Facsimile: (303) 265-9618
Email:   tmayle@kilpatricktownsend.com

Amanda N. Brouillette (*pro hac vice*)
Andrew N. Saul (*pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email:   abrouillette@kilpatricktownsend.com
         asaul@kilpatricktownsend.com

***Attorneys for Defendant***
***SailPoint Technologies Holdings, Inc.***

By:	/s/ Lowell D. Mead
Heidi L. Keefe (CA Bar 178960)
hkeefe@cooley.com
Reuben H. Chen (*pro hac vice*)
rchen@cooley.com
Lowell D. Mead (CA Bar 223989)
lmead@cooley.com
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

***Attorneys for Defendant Vistra Corp.***

11

## CERTIFICATE OF CONFERENCE

The undersigned certifies that the parties conferred in good faith by Webex conference on Friday, July 22, 2022, but were unable to resolve this matter by agreement. Defendants SailPoint and Vistra believe they are entitled to a severance and stay of the claims against them, but Plaintiff Topia disagrees.

Dated: July 25, 2022

*/s/ Steve R. Borgman*
Steve R. Borgman

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that on the date below all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing via the Court's CM/ECF system.

Dated: July 25, 2022

*/s/ Steve R. Borgman*
Steve R. Borgman
