# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| TOPIA TECHNOLOGY, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 6:21-CV-01372-ADA |
| BOX, INC., SAILPOINT TECHNOLOGIES HOLDING, INC., and VISTRA CORP., | **JURY TRIAL DEMANDED** |
| Defendants. | |

**DEFENDANT BOX, INC.'S MOTION TO SEVER, STAY, AND TRANSFER**

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................... 1

II.     FACTUAL BACKGROUND ............................................................................... 2

        A.      Asserted Patents and Accused Products ................................................. 2

        B.      Plaintiff Has No Meaningful Connection to This District ...................... 2

        C.      SailPoint and Vistra ............................................................................... 2

        D.      The Vast Majority of Key Witnesses and Evidence Are Located in NDCA ......... 2

                i.      Box's relevant evidence ............................................................... 2

                ii.     Location of third-party witnesses ................................................ 4

III.    ARGUMENT ..................................................................................................... 4

        A.      The Claims Against SailPoint and Vistra Should Be Severed and Stayed
                Pending the Resolution of the Case Against Box ................................... 5

                i.      Plaintiff's claims against SailPoint and Vistra are peripheral ................... 6

                ii.     Plaintiff's claims against SailPoint and Vistra will likely be
                        resolved by the claim against Box ............................................... 7

                iii.    Plaintiff will not be prejudiced by the stay ................................. 8

                iv.     The stay will simplify the issues in the case .............................. 8

        B.      The Case Against Box Should Be Transferred to NDCA ........................ 9

                i.      This case could have been brought in NDCA .............................. 9

                ii.     The private factors overwhelmingly favor transfer ................... 10

                        1.      The sources of proof are most easily accessed in the
                                transferee forum ............................................................ 10

                        2.      Key non-party witnesses are within the subpoena power of
                                NDCA, but not this Court ............................................... 11

                        3.      Willing witnesses can attend trial more easily in the
                                transferee forum ............................................................ 11

                        4.      The practical issues are neutral ..................................... 13

                iii.    The public interest factors also favor transfer .......................... 14

                        1.      The administrative difficulties flowing from court
                                congestion favor transfer ............................................... 14

                        2.      Local interests in having this case decided at home strongly
                                favor transfer ................................................................ 14

                        3.      The familiarity of the forum with the law and conflicts of
                                law factors are neutral ................................................... 15

                iv.     Alternatively, the Austin Division is Clearly More Convenient ............. 15

IV.     CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex. v. Blackberry*,
No. 6:13-cv-362, 2014 WL 10748106 (W.D. Tex. June 11, 2014) ........................................14

*Anascape, Ltd. v. Microsoft Corp.*,
475 F. Supp. 2d 612 (E.D. Tex. 2007) ....................................................................................8

*Anderson v. Red River Waterway Comm'n*,
231 F.3d 211 (5th Cir. 2000) ...................................................................................................5

*In re: Apple Inc.*,
818 F. App'x 1001 (Fed. Cir. 2020) .........................................................................................9

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ........................................................................................14, 15

*In re Apple, Inc.*,
581 F. App'x 886 (Fed. Cir. 2014) ..........................................................................................9

*In re Atlassian Corp.*,
No. 2021-177, 2021 WL 5292268 (Fed. Cir. Nov. 15, 2021) .................................................12

*AudioEye Inc. v. accessiBe Ltd.*,
No. 6-20-cv-997-ADA, 2022 WL 827805 (W.D. Tex. Mar. 9, 2022) ....................................10

*Collaborative Agreements, LLC v. Adobe Sys.*,
No. 1:14-cv-356-LY, 2015 WL 10818739 (W.D. Tex. Aug. 21, 2015) ..........................4, 5, 7

*In re DISH Network LLC*,
No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) ...........................................11, 14

*In re EMC Corp.*,
677 F.3d 1351 (Fed. Cir. 2012) ...............................................................................................5

*In re Genentech, Inc.*
566 F.3d 1338 (Fed. Cir. 2009) ...........................................................................9, 10, 11, 12

*In re Google LLC*,
No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ................................................12

*In re Google LLC*,
No. 2021-171, 2021 WL 4592280 (Fed. Cir. Oct. 6, 2021) ....................................................12

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*HD Silicon Sols. LLC v. Microchip Tech. Inc.*,
   No. 6:20-cv-1092-ADA, 2021 WL 4953884 (W.D. Tex. Oct. 25, 2021)..............................10

*In re HP Inc.*,
   No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ............................................9, 11

*In re Hulu, LLC*,
   No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ...................................................11

*Innovative Foundry Techs. v. Semiconductor Mfg. Int'l Corp.*,
   No. 6:19-cv-719-ADA, Dkt. 197 (W.D. Tex. Dec. 30, 2020) ...................................................5

*In re Juniper Networks, Inc.*,
   14 F.4th 1313 (Fed. Cir. 2021) ...............................................................................................12

*Katz v. Lear Siegler, Inc.*,
   909 F.2d 1459 (Fed. Cir. 1990).................................................................................................8

*Kirsch Rsch. & Dev., LLC v. BlueLinx Corp.*,
   No.6:20-cv-316-ADA, 2021 WL 4555803 (W.D. Tex. Oct. 4, 2021).......................................9

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936).................................................................................................................5

*In re Netflix, Inc.*,
   No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan 19, 2022).....................................................10

*In re Nintendo Co.*,
   589 F.3d 1194 (Fed. Cir. 2009).................................................................................................9

*In re Nintendo of Am., Inc.*,
   756 F.3d 1363 (Fed. Cir. 2014).........................................................................................5, 6, 7

*In re Radmax, Ltd.*,
   720 F.3d 285 (5th Cir. 2013) (per curiam)..............................................................................15

*In re Samsung Elecs. Co.*,
   2 F. 4th 1371 (Fed. Cir. 2021) ...............................................................................................14

*Sonrai Memory Ltd. v. Oracle Corp.*,
   No. 6:21-cv-116-ADA, 2022 WL 315023 (W.D. Tex. Feb. 2, 2022) .....................................13

*SZ DJI Tech. Co. v. Autel Robotics USA LLC*,
   No. 16-cv-706-LPS, 2019 WL 1244948 (D. Del. Mar. 18, 2019)............................................8

iii

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*,
    458 F.3d 1335 (Fed. Cir. 2006)...................................................................................8

*Topia Technology, Inc. v. Dropbox, Inc., SailPoint Technologies Holdings, Inc.,*
    *and Clear Channel Outdoor Holdings, Inc.*,
    6:21-cv-1373-ADA (W.D. Tex.) .............................................................................13

*In re Toyota Motor Corp.*,
    747 F.3d 1338 (Fed. Cir. 2014)...................................................................................9

*Triller, Inc. v. ByteDance, Ltd.*,
    No. 6:20-cv-693-ADA, 2021 WL 3913589 (W.D. Tex. July 9, 2021)....................11

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)..............................................................................9, 15

*Uniloc USA Inc. v. Box, Inc.*,
    No. 1:17-cv-754-LY, 2018 WL 2729202 (W.D. Tex. June 6, 2018) .....................13

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
    759 F.3d 1307 (Fed. Cir. 2014)...................................................................................8

*VoIP-Pal.com, Inc. v. Google LLC*,
    No. 6:21-cv-667-ADA, 2022 U.S. Dist. LEXIS 102090 (W.D. Tex. May 31,
    2022) .......................................................................................................................10

*VoIP-Pal.com, Inc. v. T-Mobile USA, Inc.*,
    No. 6:21-cv-674-ADA, Dkt. 53, 6-7 (W.D. Tex. May 31, 2022)...........................11

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ......................................................................................9

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ......................................................................................9

*Wyndham Assocs. v. Bintliff*,
    398 F.2d 614 (2d Cir. 1968).......................................................................................6

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010 .................................................................................13

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Statutes**

28 U.S.C.
  § 1400(b)................................................................................................................9
  § 1404(a).......................................................................................................1, 4, 15

**Other Authorities**

Fed. R. Civ. P. 21..........................................................................................................5

Defendant Box, Inc. ("Box") respectfully moves to (1) sever and stay all claims against Defendants SailPoint Technologies Holdings, Inc. ("SailPoint") and Vistra, Corp. ("Vistra"), and (2) transfer this case to the Northern District of California ("NDCA") under 28 U.S.C. § 1404(a). Alternatively, Box moves to transfer this case to the Austin Division. The parties met and conferred on July 22, 2022. Plaintiff Topia Technology, Inc. ("Plaintiff") opposes this Motion.

## I.    INTRODUCTION

First, Plaintiff's claims implicate Box's products, and Plaintiff alleges that SailPoint and Vistra allegedly infringe the asserted patents[1] only because they purportedly use Box's products. *See, e.g.*, Dkt. 8, ¶¶ 43-47, 61-65; *see also* Declaration of Lowell D. Mead ("Mead Decl."), Exs. 1-6 at 1-2 (charting "Box products" and "client software, including Box Sync and Box Drive" for all defendants). The gravamen of Plaintiff's dispute therefore lies with Box alone. Under Federal Circuit and Western District precedent, Box is the true defendant, and the claims against the others are peripheral. When the claims against Box are resolved, litigation with the others will almost certainly be unnecessary. Therefore, Plaintiff's claims against SailPoint and Vistra should be severed and stayed pending resolution of the case against Box.

Second, this case does not belong in the Western District of Texas. Rather, this case belongs in NDCA, where key relevant witnesses and evidence are located. Box's Northern California headquarters is the strategic center of Box's business. The Box employees most knowledgeable about the development, function, marketing, and sales of the accused products work and reside in the San Francisco Bay Area. Several former Box employees and prior artists also are located within NDCA's subpoena power. In contrast, the case has no substantial connection with the Western District of Texas. Plaintiff has no apparent ties to this forum, and no Box employees in Austin

---

[1] U.S. Patent Nos. 9,143,561, 10,067,942, 10,289,607, 10,642,787, 10,754,823, and 11,003,622.

1

have knowledge pertinent to this case. This case should thus be transferred to NDCA.

## II.    FACTUAL BACKGROUND

### A.    Asserted Patents and Accused Products

Plaintiff asserts six patents. On April 28, 2022, Plaintiff served its initial infringement contentions, accusing the same Box products—Box Sync, Box Drive, and Box Zones—across all three defendants. Mead Decl., Exs. 1-6 at 1-2.

### B.    Plaintiff Has No Meaningful Connection to This District

Founded in 1999, Plaintiff is incorporated in Washington and headquartered in Tacoma. Dkt. 8, ¶ 2. Plaintiff failed to plead any connection to Texas. *See generally id.*

### C.    SailPoint and Vistra

SailPoint and Vistra are Delaware corporations with places of business in Austin, Texas. *Id.*, ¶¶ 5-8. Box develops and offers the accused Box products (Box Sync, Box Drive, and Box Zones), and SailPoint and Vistra do not have any involvement in the development or design of these products. Declaration of Denis Roy ("Roy Decl."), ¶¶ 6, 17. SailPoint and Vistra do not have any unique technical documents pertaining to the function, operation, architecture, software, or hardware of the accused products. *Id.*, ¶ 17. Finally, technical documentation and software for the accused products are hosted by Box, and documents in SailPoint and Vistra's possession are likely duplicative of those possessed by Box. *Id.*

### D.    The Vast Majority of Key Witnesses and Evidence Are Located in NDCA

#### i.    Box's relevant evidence

Box's corporate headquarters is in Redwood City, California, in NDCA. *Id.*, ¶ 3. Box's CEO, CFO, COO, CPO, and other senior financial, technical, marketing, and creative executives are all based in Redwood City, where the most significant sales, marketing, pricing, finance, and engineering decisions are made related to Box's U.S. products. *Id.*, ¶ 4. Approximately 700 Box

2

employees work full-time at Box's Redwood City office. *Id.*, ¶ 5.

The allegedly infringing products—Box Sync, Box Drive, and Box Zones—were primarily designed and developed in NDCA. *Id.*, ¶ 6. No employees involved in the design, development, function, operation, marketing, and sale of the accused products work or reside in Austin, *id.*, ¶ 7, and the technical, marketing, and sales functions related to the accused products are ultimately managed out of Box's San Francisco Bay Area offices. *Id.*, ¶¶ 6-7.

The Box employees with the most knowledge regarding the development, function, operation, marketing, and sale of Box Sync, Box Drive, and Box Zones work in NDCA. *Id.* These employees include likely witnesses in this case with relevant technical knowledge about these products, such as Tamar Bercovici (Vice President of Engineering), Jeremy Chiu (Software Engineering Manager), and Nathan Trueblood (Vice President, Product Management). *Id.*, ¶¶ 9, 14-16. Similarly, Box's employees also include likely witnesses with relevant knowledge about marketing, sales, and financial information for Box Sync, Box Drive, and Box Zones, including Denis Roy (Vice President, Brand and Communications) and Eli Berkovitch (Chief Accounting Officer). *Id.*, ¶¶ 10-11. The relevant documents relating to these products, including technical documentation, computer source code, sales, marketing, financial, and other business information, are managed from Box's Redwood City headquarters, and, as a matter of practice, are maintained and created by Box's employees in NDCA working on these products. *Id.*, ¶ 12.

While Box has an office in Austin, the design and development of the accused Box products has not taken place there. *Id.*, ¶¶ 12-13. All functions of the Austin office are managed out of Box's headquarters in NDCA. *Id.*, ¶ 13. Most of the employees in Box's Austin office primarily focus on sales, customer support, and security. *Id.*. None of the Box executives or employees most knowledgeable regarding the development, function, marketing, or sale of the accused products

are located in Texas. *Id.*, ¶¶ 6-7. None of Box's datacenters are located in Texas either. *Id.*, ¶ 12.

### ii.    Location of third-party witnesses

Multiple third-party individuals with knowledge about the accused products reside in NDCA. For Box Sync, none of the members of the initial development team remain at Box, but two still reside in NDCA: Satish Asok (original technical lead, oversaw initial development) and Griffin Dorman (product manager). *Id.*, ¶ 14; Mead Decl., Exs. 7-8. Further, Box Sync's former engineering manager, Matthew Self, also is a resident of NDCA. Roy Decl., ¶ 14; Mead Decl., Ex. 9. Three individuals involved in the development of Box Drive, Neal Wu, Ritik Malhotra, and Tanooj Luthra, are now in New York, and Arnold Goldberg, VP Engineering who led and scaled engineering efforts for Box Sync, is in Utah. Roy Decl., ¶¶ 14, 15; Mead Decl., Exs. 10-13. Michael R. Manzano, the sole named inventor of the asserted patents[2], apparently recently re-located to the Las Vegas Area from the San Francisco Bay Area. Mead Decl., Ex. 14. He was Plaintiff's co-founder and Chief Technology Officer. *Id.* He likely has information about the asserted patents and potential prior art. Finally, over a dozen prior artists are located in NDCA, including individuals knowledgeable about relevant system art. *See* Mead Decl., Exs. 22-35.

## III.    ARGUMENT

The Western District of Texas considers three factors in determining whether severance, stay, and transfer a patent case is appropriate: (1) the claim to be severed and stayed is peripheral to the remaining claims; (2) the adjudication of the remaining claim is potentially dispositive of the severed claim; and (3) the transfer of the remaining claims is warranted under 28 U.S.C. § 1404(a). *Collaborative Agreements, LLC v. Adobe Sys.*, No. 1:14-cv-356-LY, 2015 WL 10818739,

---

[2] Plaintiff filed petitions at the USPTO to "correct inventorship" of the asserted patents by "adding the names of John C. Haager as co-inventor" on December 17, 2021. Mead Decl., Exs. 15-20. Mr. Haager is Plaintiff's Chief Blockchain Architect and is located in Washington. *Id.*, Ex. 21.

at *2-3 (W.D. Tex. Aug. 21, 2015). Here, the three factors favor severing and staying the derivative claims against SailPoint and Vistra and transferring the case against Box to NDCA.

### A.    The Claims Against SailPoint and Vistra Should Be Severed and Stayed Pending the Resolution of the Case Against Box

Under Rule 21, any claim against a party may be severed and proceeded with separately. *See* Fed. R. Civ. P. 21. The Court has broad discretion to sever and stay the action to promote judicial economy. *Anderson v. Red River Waterway Comm'n,* 231 F.3d 211, 214 (5th Cir. 2000); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). In patent cases, motions to sever are governed by Federal Circuit law because the assessment of joinder necessarily requires an analysis of the accused acts of infringement. *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012). When a lawsuit is filed against a manufacturer and its customers, or other similarly situated defendants, the case against the peripheral defendants may properly be severed and stayed pending resolution of the case against the manufacturer to promote judicial economy. *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365-66 (Fed. Cir. 2014); *Innovative Foundry Techs. v. Semiconductor Mfg. Int'l Corp.*, No. 6:19-cv-719-ADA, Dkt. 197 (W.D. Tex. Dec. 30, 2020); *Collaborative Agreements*, 2015 WL 10818739, at *2-3. Under "appropriate circumstances, the court has the power to sever the claims against properly joined [d]efendants and to stay the proceedings as to any of them." *Collaborative Agreements*, 2015 WL 10818739, at *2.

In this case, all allegations against SailPoint and Vistra are derivative of Plaintiff's allegations against Box. When the case against Box is resolved—whether by a finding of liability and award of damages, a finding of noninfringement or invalidity of the asserted patents, or a settlement resulting in a license—it is highly unlikely that there will be any issues remaining for the peripheral defendants. Thus, severing and staying the actions against the peripheral defendants is the most efficient way to proceed with the case, and there is no benefit to permitting the claims

against SailPoint and Vistra to proceed on the same schedule as Box.

> i.    **Plaintiff's claims against SailPoint and Vistra are peripheral**

In a busy district like this, the promotion of judicial economy and the efficient administration of justice are of paramount importance. Requiring peripheral defendants to remain in the case would only increase the complexity of the case, the number of witnesses, and the cost.

When the resolution of a case against a manufacturer would inherently resolve claims against users of the accused technology, the cases against other defendants should be severed and stayed pending resolution of the case against the manufacturer. *See Nintendo*, 756 F.3d at 1364-66 (applying rationale of the "customer-suit exception" to reverse the denial of a motion to sever, stay, and transfer). The Federal Circuit decision in *Nintendo* is instructive. There, the plaintiff sued Nintendo and eleven retailer defendants in the Eastern District of Texas. *Id.* at 1364. The Federal Circuit applied the reasoning of the "customer-suit" exception to reverse the trial court's denial of a request to sever, stay, and transfer, even though the eleven retailers were not technically Nintendo's "customers":

> When a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally takes precedence. This "customer-suit" exception to the "first-to-file" rule exists to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the "true defendant" in the dispute.
>
> ***While the circumstances of this case differ from those of the customer-suit exception, we agree with the district court that the same general principles govern in that <u>Nintendo is the true defendant</u>.***

*Id.* at 1365 (emphasis added) (internal citations omitted). The court also recognized that "[s]everance and transfer are appropriate 'where the administration of justice would be materially advanced[.]'" *Id.* at 1366 (quoting *Wyndham Assocs. v. Bintliff,* 398 F.2d 614, 618 (2d Cir. 1968)). Because "Nintendo's liability is predicate to recovery from any of the defendants, the case against

Nintendo must proceed first, ***in any forum.***" *Nintendo*, 756 F.3d at 1366 (emphasis added). Thus, severance and stay may be considered separately from transfer, and the Court may sever and stay SailPoint and Vistra in the interest of judicial economy even if it declines transfer for Box.

In *Collaborative Agreements*, the plaintiff sued Adobe and its customers for patent infringement. 2015 WL 10818739, at *1. Adobe moved to (1) sever and stay the customer defendants, and (2) transfer the primary case to NDCA. *Id*. at *2. Judge Yeakel applied the *Nintendo* reasoning and noted:

> Even though the facts of this case and the relationship between Adobe and the Customer Defendants are slightly different than the manufacturer-customer relationship typical in a "customer-suit exception to the first-to-file rule," . . . "the same general principles govern" and that Adobe is the "true defendant" in this case.

*Id*. at *3 (quoting *Nintendo*, 756 F.3d at 1365). The Court thus granted Adobe's motion because "the infringement case against all [d]efendants will rise and fall with the question of whether Adobe's software is found to infringe the claims of the patent." *Collaborative Agreements*, 2015 WL 10818739, at *2.

Like Nintendo and Adobe in those cases, Box is the "true defendant" here; Box develops and offers the accused products to its customers and partners, which have no role in their development or design. Roy Decl., ¶ 17. Plaintiff's claims against SailPoint and Vistra are based only on their alleged use of Box's products and are hence peripheral to the allegations against Box.

> ### ii.  Plaintiff's claims against SailPoint and Vistra will likely be resolved by the claim against Box

As in *Nintendo* and *Collaborative Agreements*, Plaintiff's claims against SailPoint and Vistra will likely be fully resolved by resolution of the claim against Box. *Nintendo*, 756 F.3d at 1366 ("Since Nintendo's liability is predicate to recovery from any of the defendants, the case against Nintendo must proceed first, in any forum."); *Collaborative Agreements*, 2015 WL

10818739, at *2 ("a resolution of the case against Adobe (either way) will resolve the cases against the customers because, either the system will be adjudged to not infringe, or it will be found to infringe and whatever royalty is due from Adobe will exhaust [Collaborative's] remedies as to the [Customer Defendants'] use of the system" (alterations in original)).

### iii.    Plaintiff will not be prejudiced by the stay

As explained above, Box is the true defendant in the case. The claims against SailPoint and Vistra are peripheral to Box and staying the claims against SailPoint and Vistra will not hinder Plaintiff's ability to prosecute and resolve its infringement claims. *See, e.g., Anascape, Ltd. v. Microsoft Corp.*, 475 F. Supp. 2d 612, 617 (E.D. Tex. 2007). Further, Plaintiff will not be disadvantaged with regard to any potential recovery as any potential monetary relief will be available after the stay, and SailPoint and Vistra have agreed to be bound by the outcome. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014); *SZ DJI Tech. Co. v. Autel Robotics USA LLC*, No. 16-cv-706-LPS, 2019 WL 1244948, at *2 (D. Del. Mar. 18, 2019) ("Staying this litigation will not unduly prejudice [plaintiff], which may still recover monetary damages if (and when) infringement is found.").

### iv.    The stay will simplify the issues in the case

The requested stay will allow the Court to focus on Box, the party that controls, developed, and designed the accused products. Plaintiff could resolve its disputes with the defendants in fewer proceedings, saving significant litigation expenses for all parties, and the burden on the Court's limited resources would be reduced by eliminating unnecessary hearings and a liability trial for SailPoint and Vistra. *See Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006) ("[T]he guiding principles in the customer suit exception cases are efficiency and judicial economy[.]"); *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir.

1990) ("[L]itigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer."); *Kirsch Rsch. & Dev., LLC v. BlueLinx Corp.*, No.6:20-cv-316-ADA, 2021 WL 4555803, at *1 (W.D. Tex. Oct. 4, 2021) (staying case against customer under the customer-suit exception).

**B.     The Case Against Box Should Be Transferred to NDCA**

As a preliminary matter, the party seeking transfer must first show that the claims "might have been brought" in the proposed transferee district. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008). To determine whether transfer is warranted, and the transferee venue is "clearly more convenient" than the transferor district, the Fifth Circuit considers "private" and "public" factors. *Id.* at 315 (citations omitted); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The plaintiff's forum choice is not a factor. *In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009).

The convenience of the witnesses is the most important factor in the transfer analysis. *In re: Apple Inc.*, 818 F. App'x 1001, 1003 (Fed. Cir. 2020); *In re Genentech, Inc.* 566 F.3d 1338, 1343 (Fed. Cir. 2009). "[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *Nintendo*, 589 F.3d at 1198; *see also In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014); *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321-22 (Fed. Cir. 2008); *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 (Fed. Cir. Sept. 25, 2018). Thus, this suit should be transferred.

**i.     This case could have been brought in NDCA**

This action could have been brought in NDCA, because Box is headquartered there. 28 U.S.C. § 1400(b); Roy Decl., ¶ 3.

### ii.    The private factors overwhelmingly favor transfer

1.    <u>The sources of proof are most easily accessed in the transferee forum</u>

The first factor weighs heavily in favor of transfer. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *HD Silicon Sols. LLC v. Microchip Tech. Inc.*, No. 6:20-cv-1092-ADA, 2021 WL 4953884, at *2 (W.D. Tex. Oct. 25, 2021) (citation omitted). Here, Box's technical documentation, computer source code, sales, marketing, financial, and other business information, including all documentation related to Box Sync, Box Drive, and Box Zones, are located in Box's datacenters or on third-party servers managed from Box's Redwood City headquarters. Roy Decl., ¶ 12; *In re Netflix, Inc.*, No. 2022-110, 2022 WL 167470, at *3 (Fed. Cir. Jan 19, 2022) (factor favoring transfer where documents managed and maintained in NDCA); *Genentech*, 566 F.3d at 1345; *AudioEye Inc. v. accessiBe Ltd.*, No. 6-20-cv-997-ADA, 2022 WL 827805, at *3 (W.D. Tex. Mar. 9, 2022) ("The Fifth Circuit has held that, even in the context of electronic documents that can be accessed anywhere on earth, this factor is not superfluous."). Additionally, Box's documentation about these products are maintained and created by Box's employees working on these products. Roy Decl., ¶ 12. These employees are primarily located in NDCA. *Id.*, ¶¶ 6-7, 12; *VoIP-Pal.com, Inc. v. Google LLC*, No. 6:21-cv-667-ADA, 2022 U.S. Dist. LEXIS 102090, at *8 (W.D. Tex. May 31, 2022) ("This Court must not only consider the location of Google's documents, all of which are in [NDCA], but also the location of 'document custodians' and 'where documents are created and maintained, which may bear on the ease of retrieval.'" (citation omitted)).

Plaintiff is incorporated in Washington, with its headquarters in Tacoma. Dkt. 8, ¶ 2. Given Plaintiff's lack of presence in Waco, and the heavy concentration of evidence in NDCA, that district is clearly more convenient than Waco. This factor weighs heavily in favor of transfer.

2.     Key non-party witnesses are within the subpoena power of NDCA, but not this Court

The second factor, the availability of the compulsory process, also weighs in favor of transfer. *See, e.g.*, *Genentech*, 566 F.3d at 1345 ("The fact that [a] transferee venue is a venue with usable subpoena power . . . weighs in favor of transfer, and not only slightly."); *Triller, Inc. v. ByteDance, Ltd.*, No. 6:20-cv-693-ADA, 2021 WL 3913589, at *5 (W.D. Tex. July 9, 2021) (transferring to NDCA where one non-party witness fell within that district's subpoena power); *In re DISH Network LLC*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) ("[W]hen there is no indication that a non-party witness is willing," the Court must presume that its subpoena power will be necessary to secure the witness' attendance (quoting *HP*, 2018 WL 4692486, at *3 n.1)); *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021) (location of prior art witnesses in California was relevant, no need to show unwilling to travel).

Here, NDCA, and not the Western District of Texas, has absolute subpoena power over several third-party witnesses, including prior Box employees knowledgeable about the design and development of Box Sync and Box Drive, Messrs. Asok, Dorman, and Self, and prior artists, including those knowledgeable about prior art systems and patents, Gibu Thomas, Tom Rolander, Adi Ruppin, Stephen Lawrence, George Moromisato, David Braginsky, Eric Uhrhane, David Jeske, Akash Sagar, Lambertus Hesselink, Dharmarus Rizal, Eric Bjornson, and Walter vonKoch. *See* Mead Decl., Exs. 7-9, 22-35; Roy Decl., ¶ 14. This factor therefore favors transfer. *See VoIP-Pal.com, Inc. v. T-Mobile USA, Inc.*, No. 6:21-cv-674-ADA, Dkt. 53, 6-7 (W.D. Tex. May 31, 2022) (finding "dozen or so prior art witnesses in [] NDCA" outweigh "two witnesses here in [] WDTX," so this factor favored transfer).

3.     Willing witnesses can attend trial more easily in the transferee forum

The third factor, the cost of attendance for willing witnesses, strongly favors transfer. "The

convenience of the witnesses is probably the single most important factor in transfer analysis." *Genentech*, 566 F.3d at 1343 (citation omitted); *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at \*4-5 (Fed. Cir. Sept. 27, 2021) (finding that the district court abused its discretion by not weighing the convenience to witnesses factor strongly in favor of transfer where Google identified a number of potential witnesses in NDCA); *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at \*4-5 (Fed. Cir. Oct. 6, 2021) (convenience of party witnesses favored transfer); *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318-19 (Fed. Cir. 2021) (same).

Box's VP of Engineering, Ms. Bercovici, who leads the engineering efforts related to the accused products, and nearly 350 other members of the engineering team work at Box's Redwood City headquarters, which is over 1700 miles away from the Western District of Texas. Roy Decl., ¶ 9; Mead Decl., Ex. 36. Additionally, Box has identified five specific employees with relevant information, who are Box's expected trial witnesses, in NDCA. Roy Decl., ¶¶ 8-11, 14-16.

Additional employees who work on the accused products and may have relevant knowledge are located in Boston, Colorado, New York, Seattle, or outside the United States (in Poland). *Id.*, ¶ 7. For these individuals, particularly those in Poland, NDCA, with three international airports, is likely more convenient than the Western District of Texas. *Compare* Mead Decl., Exs. 37-41 *with id.*, Exs. 42-46; *In re Atlassian Corp.*, No. 2021-177, 2021 WL 5292268, at \*3 (Fed. Cir. Nov. 15, 2021) (employees overseas would spend "significantly less time traveling to [NDCA] because there is no major airport in the Waco Division of [W.D. Tex.]").

Plaintiff's witnesses, to the extent there are any, including Mr. Haager, are likely located in Tacoma, Washington, where Plaintiff is incorporated. Dkt. 8, ¶ 2. There are numerous short direct flights between Seattle and San Francisco each day. Mead Decl., Ex. 40. NDCA is also more convenient for Mr. Manzano to the extent he is a willing party witness. *See* Mead Decl., Exs. 47-

48. There are no party witnesses in Texas, let alone Waco, that tip the scales against transfer. *Sonrai Memory Ltd. v. Oracle Corp.*, No. 6:21-cv-116-ADA, 2022 WL 315023, at *3 (W.D. Tex. Feb. 2, 2022) (granting transfer where "[n]either party has witnesses in Waco"). NDCA is more convenient for both sides.

### 4.    The practical issues are neutral

"[M]ultiple suits involving the same or similar issues may create practical problems that will weigh in favor of or against transfer." *Uniloc USA Inc. v. Box, Inc.*, No. 1:17-cv-754-LY, 2018 WL 2729202, at *4 (W.D. Tex. June 6, 2018) (alterations in original) (citations omitted). For example, where the court has become "very familiar with the only asserted patent and the related technology during a prior litigation" or co-pending litigation, this factor may weigh against transfer. *Id.* However, "the existence of co-pending litigation [is] not dispositive in the transfer analysis." *Id*. The existence of co-pending litigation within the same forum is not a proper basis to deny transfer when the transferee forum is more convenient because the convenience of the parties and witnesses is of paramount importance. For example, in *In re Zimmer Holdings, Inc.*, the district court denied transfer based on the existence of another case brought by the plaintiff in the transferor forum. 609 F.3d 1378, 1380-82 (Fed. Cir. 2010). The Federal Circuit held that was clear error because the transferee court was clearly more convenient. *Id*.

Here, there is one other pending case in this Court that asserts the same patents.[3] Both cases are in the very early stages of litigation. This Court has not had to expend significant time becoming familiar with either the asserted patents or accused products, nor has the Court yet developed particular expertise in the facts of either of the two cases. The mere co-pendency of

---

[3] *Topia Technology, Inc. v. Dropbox, Inc., SailPoint Technologies Holdings, Inc., and Clear Channel Outdoor Holdings, Inc.*, 6:21-cv-1373-ADA (W.D. Tex.).

Plaintiff's suit against Dropbox at this early stage does not weigh against transfer, especially where differences between Box and Dropbox's independently developed products would "result in significantly different discovery, evidence, proceedings, and trial." *DISH*, 2021 WL 4911981, at *4 (quoting *In re Samsung Elecs. Co.*, 2 F. 4th 1371, 1379-80 (Fed. Cir. 2021)).

Taken together, the private interest factors overwhelmingly favor transfer.

### iii.    The public interest factors also favor transfer

#### 1.    <u>The administrative difficulties flowing from court congestion favor transfer</u>

The administrative difficulties flowing from court congestion favor transfer. This Court's docket of active patent cases is much larger than NDCA's current patent docket. As of July 14, 2022, this Court has 915 pending patent cases, and Judge Albright is presiding over 878 of them. Mead Decl., Ex. 49. In contrast, the transferee court has only 267 pending patent cases—and 19 different judges are presiding over them, an average of about 14 cases per judge. *Id.*, Ex. 50. Since January 1, 2021, 1,487 patent cases have been filed in this district, while only 260 patent cases have been filed in NDCA in the same period. *Id.*, Exs. 51-52.

#### 2.    <u>Local interests in having this case decided at home strongly favor transfer</u>

Box has had its headquarters in NDCA since 2006, so NDCA has a strong local interest in this case. Roy Decl., ¶ 3. The accused products were also primarily designed and developed at various locations in NDCA. *Id.*, ¶ 6; *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020) (favoring the transferee forum where "the accused products were designed, developed, and tested in [NDCA]"); *Affinity Labs of Tex. v. Blackberry*, No. 6:13-cv-362, 2014 WL 10748106, at *3 (W.D. Tex. June 11, 2014) (the district where a party has its principal place of business has a strong local interest). Additionally, many of Box's engineers working on the accused products, relevant

14

finance and marketing personnel, and Box's executives are located in NDCA. Roy Decl., ¶ 7; *Apple*, 979 F.3d at 1345 (favoring the transferee forum because the lawsuit "calls into question the work and reputation of several individuals residing" there). While about 200 Box employees are in Austin, these employees are largely focused on sales, customer support, and security—not the accused Box Sync, Box Drive, and Box Zones products—and Plaintiff has no ties to this District. Roy Decl., ¶ 13; *Apple*, 979 F.3d at 1345 (affirming that this factor should not give great weight to general contacts that are "untethered to the lawsuit"). This factor favors transfer.

3. <u>The familiarity of the forum with the law and conflicts of law factors are neutral</u>

The last two public interest factors are neutral. *See TS Tech.*, 551 F.3d at 1320-21.

**iv.    Alternatively, the Austin Division is Clearly More Convenient**

If the Court determines that transfer to NDCA is not warranted, this case should be transferred to the Austin Division of the Western District because there is no connection to nor sources of proof in the Waco Division of the Court. "The § 1404(a) factors apply as much to transfers between divisions of the same district as to transfers from one district to another." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (per curiam). As discussed above, Box has a location in Austin where its employees may potentially work in the event of travel, and transfer to Austin would reduce the travel for any Box witness by over 100 miles. Mead Decl., Exs. 53-54.

## IV.    CONCLUSION

Given the foregoing, Box respectfully requests that the Court (1) sever and stay the claims against SailPoint and Vistra, and (2) transfer this case to the Northern District of California. In the alternative, Box respectfully submits that the Court should transfer the case to the Austin Division of the Western District of Texas.

Dated: July 26, 2022                COOLEY LLP


By:     */s/ Reuben H. Chen*
        Heidi L. Keefe (CA Bar 178960)
        hkeefe@cooley.com
        Reuben H. Chen (*pro hac vice*)
        rchen@cooley.com
        Lowell D. Mead (CA Bar 223989)
        lmead@cooley.com
        3175 Hanover Street
        Palo Alto, CA 94304-1130
        Telephone: +1 650 843 5000
        Facsimile: +1 650 849 7400

        *Attorneys for Defendant Box, Inc.*

16

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that, on July 26, 2022, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Reuben H. Chen*