IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **TOPIA TECHNOLOGY, INC.,**<br>*Plaintiff*<br><br>-vs-<br><br>**BOX, INC., SAILPOINT TECHNOLOGIES HOLDINGS, INC., and VISTRA CORP.,**<br>*Defendants.* | 6:21-CV-01372-ADA |

## ORDER GRANTING DEFENDANTS SAILPOINT AND VISTRA'S OPPOSED MOTION TO SEVER AND STAY

Came for consideration is Defendants Sailpoint Technologies Holdings, Inc. ("Sailpoint") and Vistra Corp.'s ("Vistra") (collectively, the "Customer Defendants") Opposed Motion to Sever and Stay Under the "Customer-Suit" Doctrine filed on July 25, 2022. ECF No. 43. Plaintiff Topia Technology, Inc. ("Topia") filed its response on September 14, 2022. ECF No. 50. Defendants Sailpoint and Vistra filed a reply in support of their motion on October 5, 2022. ECF No. 53. After carefully considering the parties' briefing, the relevant facts, and the applicable law, the Court **GRANTS** Defendants Sailpoint and Vistra's Motion to Sever and Stay the proceedings against Sailpoint and Vistra.

### I.   BACKGROUND

Topia filed this action against Defendants Box, Inc. ("Box" or the "Supplier Defendant"), Sailpoint, and Vistra on December 29, 2021. The second amended complaint alleges infringement of U.S. Patent Nos. 9,143,561 ("'561 patent"), 10,006,942 ("'942 patent"), 10,289,607 ("'607 patent"), 10,642,787 ("'787 patent"), 10,754,823 ("'823 patent"), and 11,003,622 ("'622 patent"). ECF No. 48 ¶¶ 21, 73, 113, 152, 193, 233.

1

As for Defendant Box, the second amended complaint alleges that "Box offers a suite of products and services, including Box Sync and Box Drive" that infringe the asserted patents. *Id.* ¶¶ 27, 83−84, 122−23, 163−64, 203−04, 242−43. The second amended complaint describes how the Box products and services meet each limitation of the asserted claims. *Id.* ¶¶ 28−41, 79−82, 119−21, 158−62, 199−202, 239−41.

As for Defendant Sailpoint, the second amended complaint alleges that "Sailpoint is in the business of using Box products and services and providing value added integration services and products for Box's online document storage and synchronization products and services." *Id.* ¶ 13. The second amended complaint further alleges that Sailpoint's "added integration services and products for Box's online document storage and synchronization products and services" infringe the asserted patents. *Id.* ¶¶ 58, 97, 136, 177, 217, 256. These integration services "control user access, identify sensitive data, and monitor for malicious behavior." *Id.* ¶¶ 59, 98, 137, 178, 218, 257. Topia alleges that Sailpoint is liable for direct and induced infringement. *Id.* ¶¶ 60, 99−100, 138−39, 179−80, 219−20, 258−59.

As for Defendant Vistra, the second amended complaint alleges that "Vistra is a Box customer and uses Box's online document storage and synchronization products and services, including those products and services that infringe Plaintiff's patents identified below, through Box's online platforms and mobile applications." *Id.* ¶ 16. Topia alleges that Vistra directly infringes and induces infringement of the asserted patents by using Box products and services and promoting its use of Box products and services to its affiliates, subsidiaries, and other companies. *Id.* ¶¶ 69, 108−09, 147−48, 188−89, 228−29, 267−68.

Defendants Sailpoint and Vistra filed this motion to sever Topia's claims against Sailpoint and Vistra and to stay those claims pending the resolution of Topia's claims against Box. ECF No. 43 at 1.

## II.   LEGAL STANDARD

A trial court has broad discretion to stay an action against a party to promote judicial economy. *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254−55, (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Where suit is brought against a manufacturer and its customers, the action against the customers should be stayed pending resolution of the case against the manufacturer to promote judicial economy. *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365−66 (Fed. Cir. 2014).

The "customer-suit exception" to the first-filed rule provides that "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). This exception "exists to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *Nintendo*, 756 F.3d at 1365 (citation omitted). "[C]ourts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). The Federal Circuit has applied the customer-suit exception to cases in which the supplier and customer are named as defendants in the same case. *Nintendo*, 756 F.3d at 1365.

To warrant a stay of the customer suit, the case involving the manufacturer "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue." *Spread Spectrum*, 657 F.3d at 1358 (citing *Katz*, 909 F.2d at 1464). Courts are instructed to use a "flexible approach" to avoid wasteful expenditure of resources, and therefore "stay[] proceedings if the other suit is so closely related that substantial savings of litigation resources can be expected." *In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014); *see also Nintendo*, 756 F.3d at 1365−66 (determining that the customer-suit exception is "designed to facilitate just, convenient, efficient, and less expensive determination" (citations omitted)).

In determining whether the customer suit exception applies, the court analyzes three factors: "(1) whether the customer-defendant in the earlier-filed case is merely a reseller; (2) whether the customer-defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product." *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-CV-495-WCB, 2018 U.S. Dist. LEXIS 142173, at *14 (E.D. Tex. Aug. 22, 2018) (quoting *Vantage Point Tech., Inc. v. Amazon.com, Inc.*, No. 2:13-CV-909, 2015 U.S. Dist. LEXIS 675, 2015 WL 123593, at *2 (E.D. Tex. Jan. 6, 2015)). The "guiding principles in the customer suit exception cases are efficiency and judicial economy." *Spread Spectrum*, 657 F.3d at 1357 (citation omitted).

The factors courts typically consider when determining whether to grant a stay include: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set." *In re Trustees of Bos. Univ. Patent Cases*, No. CV 13-12327-PBS, 2014 WL 12576638, at *2 (D. Mass. May 16, 2014).

### III.     ANALYSIS

A.     **Customer-Suit Exception**

The Court holds that the customer-suit exception applies because: (1) Topia's claims of infringement against Sailpoint and Vistra are based primarily on their use of the accused Box products; (2) Sailpoint and Vistra have agreed to be bound by the outcomes of the claims against Box; and (3) Box is the only source of the accused products.

1.     <u>Whether the Customer Defendants Are Merely Resellers</u>

Sailpoint and Vistra argue that they are merely resellers of the accused product because the allegations against the Customer Defendants are identical to the allegations against Box. ECF No. 43 at 5. Sailpoint and Vistra argue that this factor weighs in favor of applying the customer-suit exception because the claims against the Customer Defendants are "entirely duplicative" of the claims against Box. *Id.* The Customer Defendants point out that Topia's infringement contentions are identical for all defendants in this case, and the infringement allegations focus exclusively on Box's software. *Id.* The Customer Defendants further argue that resolving the claims against Box will resolve any claims against the Customer Defendants. *Id.* at 6. Lastly, the Customer Defendants argue that Box, rather than Sailpoint or Vistra, has the greatest interest in defending the accused products against an infringement action. *Id.* Sailpoint and Vistra claim that they "play no role whatsoever in developing or offering the accused Box software, but merely use it, out of the box, without modification." *Id.*

In response, Topia argues that the claims against the Customer Defendants are not identical to the claims against Box. ECF No. 50 at 3. Topia points to the second amended complaint, which alleges that Sailpoint induced infringement through "active marketing and knowing promotion of the integration of its identity governance solutions specific to Box products and services" and

through "integrating and instructing others how to integrate its products specific to Box products and services." *Id.* Topia argues that because these acts of infringement are specific to Sailpoint's activities, Topia's claim for induced infringement against Sailpoint will not be resolved by first resolving Topia's claims against Box. *Id.* Topia argues that Sailpoint is a key party of the infringement allegations against Box because Box promotes Sailpoint's integration with Box products. *Id.* Further, Topia argues that Sailpoint's integrated product is made specially to be integrated with the Box product and has no substantial non-infringing use. *Id.*

Topia also argues that the claims against Sailpoint and Vistra will not be resolved by the outcome of the claims against Box because Topia has alleged that Sailpoint and Vistra have directly and indirectly infringed system and method claims of the asserted patents. *Id.* at 5−6. Topia argues that unlike the customer defendants in *Nintendo*, Sailpoint and Vistra cannot prove that Box's products and services infringe the asserted patents "off the shelf." *Id.* at 6. Topia argues that "the instrumentalities incorporated in the Box products and services that result in infringement of the patent claims are likely customized for integration with customers' existing systems." *Id.* at 7. Topia argues that Vistra customizes the Box product. *Id.* Topia argues that Sailpoint creates a derivative product with its own market demand based on the Box product, which will lead to separate damages. *Id.* at 8. Further, Topia argues that because it has accused Sailpoint and Vistra of infringing method claims of the asserted patents, the customer-suit exception should not apply. *Id.* Ultimately, Topia argues that because Vistra and Sailpoint customize the Box product and services and are not mere resellers of the accused product, the customer-suit exception should not apply. *Id.* at 7.

The Court agrees with Sailpoint and Vistra. "Since [Box's] liability is predicate to recovery from any of the defendants, the case against [Box] must proceed first, in any forum." *Nintendo*,

756 F.3d at 1366. While Topia alleges that Sailpoint and Vistra directly and indirectly infringe the asserted patents, Topia's infringement allegations center on the Box products. According to Defendants, Topia served a single set of infringement contentions on all three defendants. ECF No. 53 at 2. These infringement contentions charted only Box documentation to the asserted claims. *Id.* Topia does not accuse Sailpoint or Vistra's products of infringement—Topia only accuses Sailpoint and Vistra of using or promoting the Box accused products. Thus, based on Topia's infringement allegations, Box's liability at least partially determines whether Sailpoint and Vistra are also liable.

While some claims against Sailpoint and Vistra may persist after the outcome of Topia's claims against Box, the outcome of the claims against Box will "resolve the 'major issues' concerning the claims against the customer." *Spread Spectrum*, 657 F.3d at 1358. With respect to Topia's induced infringement claims against the Customer Defendants, the outcome of the direct infringement claims against Box will at least partially resolve Topia's claims of induced infringement against Sailpoint and Vistra because Topia's induced infringement claims against Sailpoint and Vistra require Topia to first prove that Box's accused products directly infringe. Thus, the outcome of Topia's claims against Box will largely determine the outcome of the remaining claims against Sailpoint and Vistra. Thus, the Court determines that this factor of the customer-suit exception weighs in favor of severing and staying the claims against the Customer Defendants.

2. <u>Whether the Customer Defendants Agree to Be Bound by the Outcome of the Box Claims.</u>

Sailpoint and Vistra agree to be bound by the outcome of Topia's claims against Box. ECF No. 43 at 7. Topia did not dispute the outcome of this factor. ECF No. 50. Because Sailpoint and

Vistra agree to be bound by the outcome of Topia's claims against Box, the Court finds that this factor favors severing and staying the action against the Customer Defendants.

### 3. Whether Box Is the Only Source of the Infringing Product

Sailpoint and Vistra argue that Topia's infringement allegations are directed only against Box's software. ECF No. 43 at 7. Topia has not argued that another manufacturer is the source of the infringing product. ECF No. 50. While Topia has argued that Sailpoint and Vistra customize the Box products, Topia's infringement allegations center on how the Box products, without Sailpoint and Vistra's customizations, meet the claim limitations. Thus, the Court determines that this factor weighs in favor of severing and staying the action against the Customer Defendants.

### B. Traditional Stay Factors

The Court gives great weight to the three factors considered under the customer-suit exception. But, for the sake of completeness, the Court considers the traditional stay factors and rejects Plaintiff's concerns as to each.

### 1. Whether Topia Is Unduly Prejudiced by a Stay

Sailpoint and Vistra argue that a stay will not unduly prejudice Topia because Sailpoint and Vistra agree to be bound by the outcome of the action against Box. ECF No. 43 at 9. Further, Sailpoint and Vistra argue that because they were not involved in the development or design of the accused products and services, they possess little knowledge relevant to the action against Box. *Id.* In response, Topia argues that it would be prejudiced by a stay because it would be forced to engage in costly and inefficient piecemeal litigation. ECF No. 50 at 10. Further, Topia argues that a stay would delay discovery, which could cause loss of evidence. *Id.* Topia also argues that a stay would lead to the possibility of inconsistent judgments between the different defendants in this case. *Id.*

The Court finds that this factor weighs in favor of a stay. A stay in this case—where the accused product comes from the remaining defendant—does not significantly delay Topia from litigating the question of infringement. Further, while Topia alleges that there is a risk that evidence will be lost if this case is stayed, the customer-suit exception is premised on the principle that the bulk of the relevant evidence comes from the supplier of the accused product, not the customer. Thus, a stay of the claims against the Customer Defendants is appropriate in this case.

2. <u>Whether a Stay Would Simplify the Issues in this Case</u>

Sailpoint and Vistra argue that this factor weighs in favor of a stay because resolving the action against Box first will simplify the action against the Customer Defendants. ECF No. 43 at 10. The Customer Defendants argue that because they will be bound by the infringement and invalidity outcomes of Topia's claims against Box, the severed action against Sailpoint and Vistra will be greatly simplified. *Id.* Further, Sailpoint and Vistra argue that severing and staying the claims against Sailpoint and Vistra will reduce the burden on the Court's resources because it will eliminate unnecessary hearings and a trial on liability for the Customer Defendants. *Id.* In response, Topia argues that "even if Sailpoint and Vistra agree to be bound by a judgment against Box, that judgment would not necessarily extend to their separate and distinct acts of infringement." ECF No. 50 at 9.

The Court finds that this factor weighs in favor of a stay. As discussed above, the outcome of Topia's claims against Box will "resolve the 'major issues' concerning the claims against the customer." *Spread Spectrum*, 657 F.3d at 1358. While some of Topia's claims against Sailpoint and Vistra may persist, the issues will be greatly simplified by first resolving the claims against Box.

       3.      <u>Whether Discovery Is Completed and Whether a Trial Date Has Been Set</u>

Sailpoint and Vistra argue that this factor weighs in favor of a stay because this case is in its early stages. *Id.* Topia does not dispute the outcome of this factor. ECF No. 50. The Court finds that these factors do not weigh in favor of a stay because a trial date has been set and discovery began on December 6, 2022. ECF No. 36 (setting the trial date set for December 11, 2023); ECF No. 61 (delaying the start of fact discovery). However, because the case is still in the early stages of litigation, the Court finds that this factor does not weigh heavily against a stay.

### IV.    CONCLUSION

It is therefore **ORDERED** that Defendants Sailpoint and Vistra's Opposed Motion to Sever and Stay Pending Final Resolution of Plaintiff's Claim Against Box is **GRANTED**. The Court's Clerk is directed to sever the claims against Sailpoint and Vistra, but Sailpoint and Vistra will remain in this action for the limited purpose of allowing Topia to conduct discovery. In the severed action against Sailpoint and Vistra, the Court's Clerk is directed to include Plaintiff's Second Amended Complaint (ECF Nos. 48, 49), Sailpoint's Answer to Plaintiff's Complaint (ECF No. 56), Vistra's Answer to Plaintiff's Complaint (ECF No. 58), Patent/Trademark Form (ECF No. 2), Rule 7 Disclosure Statement by Topia (ECF No. 3), Rule 7 Disclosure Statement by Sailpoint (ECF No. 11), and Claim Construction Briefing (ECF Nos. 47, 52, 54, 59, 60). The action against Sailpoint and Vistra will be stayed pending resolution of Topia's claim against Box.

**SIGNED** this 29th day of December, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE